[Civ. No. 11076.    Third Dist.    Sept. 15, 1966.]

ST. PAUL FIRE & MARINE INSURANCE COMPANY et al., Plaintiffs and Appellants, v. HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants and Respondents.

—————
*Assigned by the Chairman of the Judicial Council.

Fitzwilliam, Memering, Stumbos & DeMers and I. D. Bolling, Jr., for Plaintiffs and Appellants.

Johnson, Davies & Greve, Claire H. Greve, McGregor, Bullen & Erich, McGregor, Bullen, Erich & McKone and George Bullen for Defendants and Respondents.

FRIEDMAN, Acting P. J.—In this declaratory relief action plaintiff St. Paul Fire & Marine Insurance Company is a truck liability insurer which seeks to impose coverage on two other truck insurance carriers under the "loading and unloading" clauses of the others' policies. The suit was submitted for decision on an agreed statement of facts supplemented by additional evidence. There is no factual dispute.

The array of parties to the accident, policyholding employers and insurance carriers is as follows: A. Teichert & Son, Inc., a general contractor, The Fidelity and Casualty Company of New York, its insurer; Herbert D. Shaffer, injured driver of sand truck, Hess-Mace Trucking Co., his employer, Hartford Accident and Indemnity Company, its insurer; Doyle Walker, driver of water truck, Marion's Trucking Co., his employer, St. Paul Fire & Marine Insurance Company, its insurer.

A. Teichert & Son, Inc., was building a highway overpass, one end of which would extend crosswise from the crest of an earthen ramp structure paralleling the highway. The structure had a flat crest and an approach ramp at each end. A sand subbase had to be laid on the ramps. Teichert entered into a subcontract with Hess-Mace Trucking Co. calling for trucks and drivers to haul sand and dump it on the ramps. Herbert D. Shaffer was a semitruck driver hauling a sand trailer for Hess-Mace. Teichert also had contracted with Marion's Trucking Co. to supply water trucks and drivers. After sand was dumped on the ramps, it was leveled by one of Teichert's graders. One of the Marion water trucks would then spray water on the sand to compact it. Doyle Walker, an employee of Marion, was driving one of Marion's water trucks at the time of the accident. Both the sand truck and the water truck were used on the job with Teichert's permission.

On the day of the accident Teichert was in the process of placing sand on the far ramp. The near ramp already had a layer of sand. When the sand trucks arrived they would drive up the near ramp, go across the crest and dump the sand on the far ramp. Most of the sand trucks would mire in the sand

on their way up the near ramp and would be towed to the crest of the ramp by Teichert's grader. Then they were driven across the crest to dump their loads. Most of the time the grader was at the far ramp spreading sand. When an arriving sand truck mired on the near ramp, the grader would come across the crest accompanied by a Teichert foreman, who would supervise the towing operation. Shaffer arrived with a loaded sand truck and started up the near ramp. About half-way up his truck became mired. At that point the truck was about 300 feet from the unloading area. The grader was not at the scene. One of Marion's water trucks, driven by Doyle Walker, was at the top of the ramp facing the sand truck. Shaffer signaled for a tow. Walker drove the water truck part way down the ramp and stopped when its front was approximately two feet from the front of the sand truck. The drivers planned that the two trucks would be chained together, following which Walker would put the water truck into reverse and attempt to tow the sand truck up the ramp. Shaffer attached a chain between the two trucks. He then mounted his truck and attempted to drive forward while Walker attempted to tow in reverse gear. The sand truck remained mired. As a prelude to disconnecting the chain between the two trucks, Walker moved the water truck forward to slacken the chain. Shaffer went between the two trucks and disconnected the chain from the sand truck. Walker put his truck into reverse in order to back away. When he took his foot off the brake of the water truck in order to accelerate, the water truck rolled forward, catching Shaffer between the bumpers and causing injuries.

Shaffer brought suit against Teichert and Marion's Trucking Company. Marion's Trucking requested that Fidelity (Teichert's insurer) and Hartford (insurer of Hess-Mace) undertake its defense in the lawsuit, but these firms refused. St. Paul then undertook the defense of its own insured, Marion's Trucking. Part way through the trial, St. Paul settled with Shaffer for $25,000. Shaffer's action then continued against Teichert (who was defended by Fidelity), which won a defense verdict. This declaratory relief action was then brought to trial.

The insuring agreements of the Hartford and Fidelity policies had substantially the same language, in which the insurer undertook: ''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused

by accident and *arising out of* the ownership, maintenance or *use* of any automobile." (Italics added.)

Both policies contained the usual omnibus clause, which defined "insured" to include: ". . . any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. . . ." Both policies defined "hired automobile" to include an automobile used under contract on behalf of the policyholder. Both policies defined the term "use" to include "loading and unloading."

St. Paul contended in the trial court, as it does on appeal, that Doyle Walker and Marion's Trucking were helping to unload the sand truck; that Shaffer's injury arose out of this unloading; thus that Walker and Marion's Trucking Company became additional insureds under the Hartford policy covering the sand truck; also, that Marion's Trucking became an additional insured, as owner of a hired vehicle, under the omnibus clause of the policy which Fidelity had issued to Teichert. The trial court granted defendants' motion for judgment pursuant to Code of Civil Procedure section 631.8.[1] It found that Walker and Marion's Trucking were not "using" the sand truck; thus that neither of the defendant companies' policies covered Walker and Marion's Trucking Company.

The defendant companies seek to confine appellate review to an inquiry into substantiality of the evidence to support the finding of nonuse. They rely on *Greening* v. *General Air-Conditioning Corp.*, 233 Cal.App.2d 545 [43 Cal.Rptr. 662], holding that trial court findings incidental to a judgment granted under section 631.8 are entitled to the same respect on appeal as any other findings. The argument misses the mark. The appeal involves issues of law, that is, questions of interpretation of automobile liability policies as applied to undisputed facts. (*Estate of Helfman*, 193 Cal.App.2d 652, 654 [14 Cal.Rptr. 482]; see 12 Couch on Insurance 2d, § 45:330, p. 340.) A comparable case is *Colby* v. *Liberty Mutual Ins. Co.*, 220 Cal.App.2d 38 [33 Cal.Rptr. 538], in which the appellate

---

[1] Code of Civil Procedure section 631.8 provides in part: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings . . . ."

court went so far as to direct amendment of purported findings of fact which did nothing more than define the scope of coverage under the loading and unloading clauses of a liability policy.

It is not necessary to hinge the decision on the "loading and unloading" clause. Hartford's policy covered accidents "arising out of the . . . use" of the sand truck. Hartford points to no special policy restriction confining this phrase. When employed in a public liability policy without restriction, words such as "use" or "using" have comprehensive scope. (*Liberty Mutual Ins. Co.* v. *Steenberg Constr. Co.*, 225 F.2d 294, 297; *American Auto. Ins. Co.* v. *Transport Indem. Co.*, 200 Cal.App.2d 543, 549 [19 Cal.Rptr. 558]; *Columbia Southern Chemical Co.* v. *Manufacturers & Wholesalers Indem. Exchange*, 190 Cal.App.2d 194, 202 [11 Cal. Rptr. 762]; see Note 89 A.L.R.2d 150, 163-164.) They do not demand that the injury be proximately caused, in the strict legal sense, by the insured vehicle; they may apply though it is at rest. (*Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194.) California decisions to date have involved truck insurance "use" clauses only as expanded by the loading and unloading concept. (See *Entz* v. *Fidelity & Casualty Co. of N.Y.*, 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382].) Court decisions on loading and unloading have developed several verbal aids or standards, some of which seem equally appropriate in fixing the scope of "use." A frequently cited decision points to the mission or function of the insured's employees as a controlling element, stating also that truck "use" includes all activities involved in transporting and hauling which are necessary and proper in making delivery of the cargo. (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 636 [235 P.2d 645], quoting from *Pacific Auto. Ins. Co.* v. *Commercial Cas. Ins. Co.*, 108 Utah 500 [161 P.2d 423, 160 A.L.R. 1251.].) One authority expresses the same idea in somewhat different form, stating that "use" is not confined to motion on the highway but extends to any activity involved in utilization of the covered vehicle in the manner intended or contemplated by the insured. (12 Couch on Insurance 2d, § 45:325, p. 337.)

The United States Court of Appeals, Fourth Circuit, and an Ohio Court of Appeals have held that the use clause of a liability policy covering a stalled vehicle extended to the

owner or operator of a vehicle engaged in towing it. (*American Fire & Cas. Co.* v. *Allstate Ins. Co.*, 214 F.2d 523; *Hall* v. *United States Fidelity & Guaranty Co.*, 107 Ohio App. 13 [155 N.E.2d 462].) The Supreme Court of Kansas, two members dissenting, has held to the contrary. (*Esfeld Trucking, Inc.* v. *Metropolitan Ins. Co.*, 193 Kan. 7 [392 P.2d 107].) The position of the federal and Ohio courts and the Kansas dissenters is more consistent with the California decisions, which favor a broad application of "use" coverage. (See *Entz* v. *Fidelity & Casualty Co. of N.Y., supra.* 64 Cal.2d at pp. 382-384.)

█ At the point of the accident the sand truck had been interrupted in a journey of the very kind for which the policyholder had purchased liability insurance. It had arrived at the consignee's premises, though not yet at the physical point of actual delivery. Inability to travel up the ramp under its own power was a standard characteristic of the journey. Although the water trucks were not ordinarily employed for towing, Walker's towing attempt was regarded by the two drivers as a routine cooperative activity. In attempting the tow, the driver of the water truck was assisting the sand truck on its insured journey. Though the attempt was unsuccessful, it had not yet broken off at the moment of the accident, for both vehicles were in a spatial relationship resulting from the towing attempt. We conclude that Walker, the water truck driver, was "using" the sand truck at the time of the accident; that the injury arose out of that use; that Marion's Trucking Company, Walker's employer, was a "person or organization legally responsible" for that use within the contemplation of Hartford's omnibus clause, hence entitled to coverage as an additional insured under the Hartford policy.

The accident occurred in the course of the sand truck's operation and did not involve the handling of its cargo. Thus the decision is more appropriately turned on the question of use, rather than the unloading clause. Whether the latter might extend coverage under the circumstances of this case, we do not decide. We do note that California espouses the broad "complete operations" concept of unloading, which covers all the operations required in any specific situation to accomplish complete delivery. (*Entz* v. *Fidelity & Casualty Co. of N.Y., supra*, 64 Cal.2d at pp. 383-384.)

Viewing Doyle Walker as a "user" of the sand truck and his employer, Marion's Trucking Co., as a person legally responsible for that use, we next consider coverage under the

omnibus clause of the Teichert-Fidelity insurance policy. Plaintiff's theory is that the sand truck was a "hired automobile" whose "actual use" at the time and place of the accident occurred with the permission of Teichert, the named insured of the Fidelity policy.

The parties' stipulation of fact includes a declaration that both the sand truck and the water truck were used on the job with Teichert's permission. The present question is outside the scope of that stipulation, which dealt with both vehicles' normal use on the project, not the water truck's deviant use as a towing mechanism.

■ The Teichert-Fidelity policy extended coverage to the policyholder's "hired automobile," defining the latter as one "used under contract in behalf of . . . the named insured. . . ." The sand truck, owned and supplied by an independent contractor, falls within the policy definition of a hired vehicle. (*Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 32-33 [17 Cal.Rptr. 12, 366 P.2d 455].) Coverage, then, depends upon the permission factor. ■■ On that point we turn to several criteria enumerated in *Exchange Cas. & Surety Co. v. Scott*, 56 Cal.2d 613, 620-622 [15 Cal.Rptr. 897, 364 P.2d 833] : scope of "permission" under automobile liability policies is measured by the relatively broad rules of construction prevailing in insurance law, not the narrower construction given the "driving with permission" provisions of Vehicle Code sections 17150-17157; permission under a policy's omnibus clause includes implied as well as express permission; finally, the existence of permission at the time and place of the accident is a question of fact.

■ Since the trial court concluded that neither Walker nor Marion's Trucking was using the sand truck, it had no occasion to find on this question of fact. It found neither for nor against the existence of permission by Teichert. This reviewing court has authority to make findings of fact in appropriate cases. (Code Civ. Proc., § 956a.) The present case is an appropriate one. The parties presented a stipulated set of facts and supplementary testimony in the trial court, fully recognizing that Teichert's permission might be a pivotal factor in fixing coverage of the Fidelity and Casualty policy. Having fired all their ammunition at a recognized target, the parties can fairly be expected to abide the result without new courtroom opportunities. There is no conflict in the evidence and no dependence on witness credibility. As we view the

facts, only one finding—a finding negativing permission—is possible. The procedural situation responds to one of the prime purposes of appellate fact finding: to supply a missing finding which will result in affirmance of the judgment and termination of the litigation as to the respondent. (*Tupman* v. *Haberkern,* 208 Cal. 256, 270 [280 P. 970]; 3 Witkin, Cal. Procedure, p. 2392.)[2]

The agreed statement of facts supplies no answer to the question of permission. Only witness at the trial was Teichert's job superintendent, Allen E. Sackett. Additionally, Doyle Walker's deposition was placed in evidence. Mr. Sackett testified that the practice on the job called for Teichert's grader to tow the mired sand trucks up the ramp; that Teichert had a foreman, Armstrong, who spent most of his time supervising the grading operation at the far ramp but would accompany the grader to the near ramp to supervise the towing of sand trucks by the grader; that the water trucks supplied by Marion were present to wet down and compact the sand at the far ramp; that they had no duty to tow other vehicles; that Walker, driver of the water truck, had no instruction from Teichert's people to do any towing; that sand trucks unable to traverse the up ramp were expected to await arrival of the Teichert grader. From 30 years of construction experience Mr. Sackett testified that a water truck was ''no good'' for towing heavy sand trucks.

Walker, driver of the water truck, testified that he responded to Shaffer's request for a tow. The grader was not at the scene. Neither driver expected the tow to be successful, but they decided to give it a try. Walker's testimony described no presence or participation by any Teichert employee.

As we view the evidence, Shaffer was expected to await the arrival of the grader and the prearranged tow by that vehicle. He chose not to do so. Presence of the water truck driven by Walker was fortuitous. Walker chose to oblige Shaffer by using the water truck as an improvised tow rig. However cooperative, the improvised arrangement deviated from the expected towing arrangement and from the expected use of the water truck. There is no evidence that any Teichert employee knew of the improvisation or saw it before the accident; no evidence that such an improvisation had occurred previously;

[2]For reasons which will appear, the litigation between St. Paul and Hartford must be remanded for more activity at the trial court level. That necessity does not demand continued embroilment of Fidelity, whose interests are quite distinct from that of Hartford, its codefendant.

no evidence inferring its expectability. Neither Shaffer nor Walker was a Teichert employee. Neither sought or received permission for the improvised tow. Each indulged in his own choice. The tow which culminated in the accident was neither prohibited nor permitted by Teichert's agents, who were both absent and unaware. There was no evidence that their continual presence at the near ramp was expected by the subcontractors' drivers. Shaffer simply decided not to wait for the arrival of the grader and of Teichert's foreman.

Teichert's subcontract with Hess-Mace, supplier of the sand trucks and their drivers, required the latter to furnish its own public liability insurance. Perhaps, since the prime contractor and the subcontractor had separate insurance policies, neither carrier may invoke against the other the rule of construction against the insurer. Even that rule permits no violence to policy language or disfigurement of facts. The Fidelity policy requires permission for the "actual use" being made of the vehicle. Teichert consented to use of the tank truck to deliver water, not to tow the trucks of other subcontractors. Silent acquiescence of responsible Teichert employees might suffice for implied permission. There was neither acquiescence in nor knowledge of the improvised arrangement. We find that Teichert gave no permission for use of the sand truck by Walker and Marion's Trucking. As a result Walker and Marion's Trucking were not additional insureds under the Fidelity policy.

The loss being simultaneously within the scope of the St. Paul and Hartford policies, the problem of primary, excess or prorata coverage occurs. The problem has not been briefed and the court's attention not called to all potentially applicable policy clauses and endorsements. Possibly the companies will agree on the matter; if not, the problem may be debated in the trial court. The judgment in favor of Hartford Accident and Indemnity Company is reversed with directions to determine any necessary question of apportionment of the loss and to enter judgment for the plaintiff consistent with this opinion. The judgment in favor of The Fidelity and Casualty Company of New York is affirmed.

Regan, J., concurred.

A petition for a rehearing was denied October 14, 1966, and the petition of respondent Hartford Accident & Indemnity Co. for a hearing by the Supreme Court was denied November 9, 1966.