[Civ. No. 39614. Second Dist., Div. Three. Sept. 27, 1972.]

TRAVELERS INSURANCE COMPANY, Plaintiff and Appellant, v. NORTHWESTERN MUTUAL INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Humphreys, McDonald & Russell and George McDonald for Plaintiff and Appellant.

Dryden, Harrington & Swartz, Raphael Cotkin and Peter Abrahams for Defendants and Respondents.

## OPINION

**THE COURT.**—This case was submitted to the trial court on stipulated facts and the insurance policies of the respective parties. Findings of fact and conclusions of law were waived. Judgment was rendered in favor of defendants, respondents herein, Northwestern Mutual Insurance Company, a corporation, and Northwestern Security Insurance Company, a corporation (hereinafter collectively referred to as Northwestern). Plaintiff Travelers Insurance Company (hereinafter Travelers) appeals from the judgment.

The facts of the occurrence giving rise to the disputed question of coverage under the respective insurance policies are as follows. On April 30, 1968, Frank J. Tallertino, operator of a Texaco service station, went to the house of Clifford and Rosalyn Schillenger at their request to change a tire on a Pontiac Le Mans automobile. The Pontiac was parked in the Schillengers' garage along with the Schillengers' other automobile, a Ford

LTD. Tallertino, finding that the Pontiac jacking equipment "was not all there," used a bumper jack from the Schillengers' Ford to jack up the Pontiac. Schillenger called Tallertino's attention to the fact that the jack was at an unusual angle. Tallertino replied, "Don't worry about it," and jacked the Pontiac up further. The Pontiac slipped backwards and down, "with a boom," and the jack went under the car. Seconds later Schillenger saw gasoline coming out in a "steady flow" and spreading on the garage floor. A gas water heater with an open pilot light was located near the front of the garage. The gasoline spread, part thereof flowing in the direction of the water heater. The men used a mop and Schillenger "brought in a water hose and water was being applied to the spreading gasoline at the time the fire ignited." The fire demolished the garage, gutted the two cars, and destroyed a 1958 Maico audiometer stored in one of the automobiles. Resultant property damage amounted to $13,996.28. Travelers paid all claims for property damage pursuant to its service station legal liability insurance policy issued March 15, 1967, to Frank J. Tallertino, individually and doing business as Frank's Texaco Service. The Schillengers' two automobiles were covered under a policy of family automobile liability insurance issued by Northwestern.

In its suit for declaratory relief and for reimbursement, Travelers took the position that its insured, Tallertino, was an additional insured under the policy issued by Northwestern to the Schillengers because Tallertino was a "user" of the Schillengers' Pontiac with their permission. Accordingly, since both Tallertino's policy and the Schillengers' policy provided for ratable sharing of loss where "other insurance" also covered the loss, Travelers contended that it was entitled to reimbursement from Northwestern for one-half of the $13,996.28 paid out by it as a consequence of the fire.

Northwestern's insuring clause provided: "To Pay, subject to the applicable Limits of Liability in the declarations, on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of. . . property damage arising out of ownership, maintenance or use of the owned automobile. . . ." The "Persons Insured" provision of Northwestern's policy provided: "PERSONS INSURED—The following are Insureds under the Automobile Liability Section. (a) With respect to the owned automobile, (1) the named Insured and any resident of the same household, (2) any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and (3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a) (1) or (2) above; . . ."

The question presented is whether Tallertino's actions in attempting to change the tire constituted a "use" of the Schillengers' Pontiac within the terms of the above quoted "Persons Insured" provision so that Tallertino was an additional insured under the policy issued by Northwestern. Travelers contends "that, when the tire-changing activities were occurring, he [Tallertino] was in the process of maintaining the Pontiac, and that such maintaining would be a use within 'Persons Insured,' Subsection (a) (2)."

The pertinent coverage provided in the Northwestern policy is required in all policies of motor vehicle liability insurance pursuant to Vehicle Code section 16451.[1] "The statutory omnibus clause [Vehicle Code section 16451] establishes two conditions of extended coverage: one, the vehicle's *use* with the owner's permission, and two, liability for damages *arising out of* the vehicle's ownership, maintenance or use." (*Pacific Indem. Co. v. Truck Ins. Exch.*, 270 Cal.App.2d 700, 703 [76 Cal.Rptr. 281].) We are here concerned with the first condition for application of extended coverage. No case has been cited to us and our independent research has revealed no California case which goes so far as to hold that a service station operator in the act of changing a tire on a customer's car becomes a user of that car under the car-owner's automobile liability insurance policy providing for coverage pursuant to Vehicle Code section 16451.

Several California cases have focused on the question of whether activity connected with an insured's car other than actual operation thereof may be considered a "using" within the terms of policy provisions required under Vehicle Code section 16451.

In *Pacific Indem. Co. v. Truck Ins. Exch., supra,* 270 Cal.App.2d 700, at page 703, the court stated the following general principles: "In deciding whether peripheral activity involving a vehicle amounts to a 'use,' the courts follow the rule that uncertainties in policy language are construed in' favor of imposing liability on the insurer; hence, that 'use' must be understood in its most comprehensive sense. [Fn. omitted.] The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured. [Fn. omitted.] [¶] American decisions considering repair and maintenance as a 'use' reach disparate results dictated by variations in the facts or policy provisions. These decisions justify the generalization that vehicle repair or maintenance by an independent garage or service station operator is not

---

[1]Vehicle Code section 16451 provides in part: "An owner's policy of motor vehicle liability insurance shall insure the person named therein and any other person, as insured, using any owned motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle . . . ."

itself a use of the vehicle; nevertheless, that a use occurs if a servicing employee drives the vehicle as an incident of the maintenance work. [Fn. omitted.]"

In harmony with the general principles enunciated in *Pacific Indem. Co.* v. *Truck Ins. Exch., supra,* it has been held that a car-wash employee driving a customer's car from the wash rack to a parking place on the car-wash lot was using the customer's car. (*Exchange Cas. & Surety Co.* v. *Scott,* 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833].) On the other hand, in the recent case of *State Farm Mut. Auto. Ins. Co.* v. *Cummings,* 21 Cal. App.3d 441 [98 Cal.Rptr. 320], the court found that individuals alleged to have negligently repaired the brakes on a vehicle were not users of the vehicle and thus not additional persons insured under the policy covering the vehicle.

In *Yandle* v. *Hardware Mutual Insurance Company* (9th Cir. 1963) 314 F.2d 435, the court held that individuals who repaired a truck-trailer axle were not using the vehicle within the meaning of an extended coverage provision similar to the one involved in the instant case. The court stated (314 F.2d at p. 437): "As generally understood, the word 'use' means to make use of or to enjoy. [Citations.] We cannot say that one who repairs a trailer axle is enjoying or using a motor vehicle. [¶] We agree with appellants that the word using is not synonymous with driving. A person is using a motor vehicle if he lets a friend drive it, [citation]; 'use' has also been defined to mean loading and unloading of a motor vehicle. [Citation.] But we have found no case which goes so far as to say that the repair of an axle is the use of a motor vehicle; and we think it cannot be extended that far." (See also *Farmers Ins. Exchange* v. *Hansel,* 12 Cal.App.3d 570, 574 [90 Cal.Rptr. 654].)

It is true that California decisions have construed "use" clauses in truck insurance policies to include "loading" and "unloading" activities. (See *Entz* v. *Fidelity & Casualty Co.,* 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382].) The reasoning of those cases points to the function of the insured vehicle as a means of transporting goods and arrives at the conclusion that loading and unloading of a truck is integral to the mission of transporting. (See *Amer. Auto. Ins. Co.* v. *Amer. Fid. & Cas. Co.,* 106 Cal.App.2d 630, 635-636 [235 P.2d 645].)

Review of decisions of other jurisdictions as to factual situations similar to that involved in the instant case has not proved helpful. As noted in *Pacific Indem. Co.* v. *Truck Ins. Exch., supra,* 270 Cal.App.2d 700, 703, "American decisions considering repair and maintenance as a 'use' reach disparate results dictated by variations in the facts or policy provisions."

Thus in *Gullickson* v. *Western Casualty & Surety Co.* (1962) 17 Wis.2d 220 [116 N.W.2d 121], an employee of the insured service station operator and a 14-year-old boy who was allowed to help out around the station were attempting to start the employee's disabled car located on the station's premises. The 14-year-old boy was pouring gasoline into the carburetor when the employee turned on the ignition, thus igniting the gasoline which burned the boy. The service station indemnity policy excluded coverage for accidents arising out of use of an automobile in connection with the station's operations if the automobile was owned by an employee. The court held that the employee was not "using" his automobile, stating (116 N.W.2d at p. 124): "We do not think the servicing of the motorist's automobile is a 'use' of the car by the proprietor of the service station or his employee. Any motorist would be astonished to hear that his car is being 'used' by the station attendant who is wiping the windshield, or filling the tank or changing a spark plug or attempting to start the motor."

On the other hand, in *Case* v. *Fidelity and Casualty Company of New York* (1964) 105 N.H. 422 [201 A.2d 897], the New Hampshire Supreme Court held that a service station owner-operator was an additional insured under a customer's policy covering persons who used the customer's car with the customer's permission where the owner-operator of the service station, in attempting to start the customer's car, turned the ignition key after getting "about ¾ of the way into the car," and the car "lurched" forward and hit the customer.

The only case which has come to our attention involving the act of changing a tire as "use" of an automobile is *Madden* v. *Farm Bureau Mut. Automobile Ins. Co.* (1948) 82 Ohio App. 111 [79 N.E.2d 586]. That case involved a claim for coverage by an insured against his own insurance company but it is nevertheless pertinent to this discussion because the policy involved provided coverage only if the injury arose out of *use* of the insured vehicle. In *Madden* the insured had been required to change a tire on his automobile in a public street during the course of a journey from one city to another. He was placing the defective tire in the rear trunk compartment when he was struck from behind by another vehicle. The Ohio appellate court found that the injury arose out of use of the insured's vehicle, stressing that the tire change occurred during the course of a journey. It was stated (79 N.E.2d at p. 588): "Now the plaintiff is the named insured, so that it is clear that he is a beneficiary of the policy and entitled to recover for damage resulting from a risk insured against, unless excluded by some positive unambiguous provision in the policy. [¶] What was the risk insured against? It is recited in the policy that the injury must arise out of the use of the automobile with the consent of the insured. Now did this

injury arise out of the use of the automobile? Appellant's counsel calls attention to the fact that the plaintiff was placing the tire which he had just removed in the rear of the automobile, and urges that this was not a use of the automobile, but was in fact a maintenance of it, in other words, that it was placing it in condition for use. But at the time he changed these tires the plaintiff was using the automobile to transport him from Cincinnati to Columbus. The changing of the tires was just as much a part of the use of the automobile for that journey as stopping to replenish the gasoline or oil, or for the change of a traffic light, or to remove ice, snow, sleet, or mist from the windshield. By such acts, the journey would not be abandoned."

We think the *Madden* case is distinguishable from the instant case because it presented a question of coverage of a named insured under the medical payments provisions of his own policy.

██ Recent California decisions have emphasized that in disputes, such as the instant one, between two insurance companies, the "use" provision of an automobile indemnity policy should not be expanded to transfer liability from the insurer for the more culpable person or entity to the insurer for the innocent person or entity. In *International Business Machines Corp. v. Truck Ins. Exch.*, 2 Cal.3d 1026 [89 Cal.Rptr. 615, 474 P.2d 431], Hatton, an employee of Red Line Carriers, while moving a desk slipped on an eraser on the floor of I.B.M.'s loading dock and sustained a personal injury. He sued I.B.M. I.B.M.'s insurance carrier claimed I.B.M. was an additional insured under Red Line's insurer's policy on the theory that I.B.M. was a permissive user of Red Line's truck. The Supreme Court held (2 Cal.3d at p. 1028) that I.B.M.'s maintenance of the loading dock did not in itself convert I.B.M. into a "user" of the Red Line truck. After reviewing the loading-unloading line of decisions, the court noted (2 Cal.3d at p. 1032): "Almost all of the cases presenting the issue of 'use' of the vehicle by the shipper involved disputes between two insurance companies, as does this case, and a holding that the shipper constitutes a 'user' of the vehicle generally results in a transfer of all or part of the ultimate liability from the insurer for the negligent entity to the insurer of an innocent entity. Such a ruling secures for the shipper an insurance rate disproportionately low relative to the hazards of his business and may ultimately tend to discourage the shipper from exerting due care in the maintenance of the premises." (See also *American Home Assur. Co. v. State Farm Mut. Auto. Ins. Co.*, 1 Cal.App.3d 355, 358 [81 Cal.Rptr. 732]; *Southern Pac. Co. v. General Acc. etc. Corp.*\*)

---

*Ordered nonpublished May 10, 1972.

Other California decisions have followed the reasoning of *International Business Machines Corp.* v. *Truck Ins. Exch., supra,* limiting the extension of such "use" clauses in cases involving claims by an insurer of a negligent party that its insured is covered under the extended coverage provisions of the policy of a non-negligent person. Thus in *Camay Drilling Co.* v. *Travelers Indem. Co.,* 12 Cal.App.3d 237 [90 Cal.Rptr. 710], the court held that a drilling company which engaged a mover to move an oil derrick, in the course of which move a "flow pipe" fell from the derrick injuring an employee of the mover, was not an "insured" under the mover's comprehensive liability policy extending coverage to one "using" the mover's vehicles with the latter's permission. In so deciding, the court relied on the Supreme Court's decision in *International Business Machines Corp.* v. *Truck Ins. Exch., supra,* 2 Cal.3d 1026, stating (12 Cal.App.3d at p. 240): "That decision enunciates a sensible limitation upon the proper application of the 'use' concept in determining the extent of insurance coverage for the permissive use of motor vehicles. Its reasoning exposes the unrealistic and unjust effects of further extending this concept to the point where it operates to transfer liability from the negligent entity to the insurer for the innocent entity—especially in cases in which the motor vehicle was only a peripheral, inactive or incidental factor."

In *State Farm Mut. Auto. Ins. Co.* v. *Cummings, supra,* 21 Cal.App.3d 441, which, as noted above, held that the repairing of a vehicle did not constitute the "use" thereof, the court stated (21 Cal.App.3d at p. 445): "The provisions of the policy now under discussion cover a risk which Vehicle Code section 16451 requires each policy of vehicle liability insurance to include. The code section coverage requirement is 'against loss . . . imposed by law for damages arising out of ownership, maintenance, or use . . . .' Therefore, when we speak of such coverage we are talking about a matter of statutory interpretation. The language quoted, it seems to us, speaks only to liability of the insured and for which he must answer to third parties—in short, to indemnity insurance. It does not contemplate 'all-risk' insurance to cover the insured's own injuries and those of persons to whom he owes no liability. [Citations.]"

The considerations set forth in the above quoted portions of *International Business Machines, Camay* and *Cummings* are applicable here. The accident involved herein was caused by the conduct of Travelers' insured, Tallertino, and his conduct occurred in the course of activity specifically covered by the service station legal liability insurance policy which Travelers issued to Tallertino. Northwestern's insured, Schillenger, was the innocent party. The automobile indemnity policy issued by Northwestern to Schillenger cannot be interpreted as an all risk policy which insured Tallertino for his liability to Schillenger. Under the authority of the cases

reviewed herein, Tallertino's activity in attempting to change the tire on the Schillengers' automobile cannot be said to be a use of that automobile under the "Persons Insured" clause of Northwestern's policy.

Since we have made an independent determination[2] that Tallertino was not an additional insured under Northwestern's policy, we need not determine the merits of Northwestern's alternative contentions that Tallertino was excluded from coverage under Exclusions (h) and (j) of Northwestern's policy.

The judgment is affirmed.

---

[2] "It is well settled that where no extrinsic evidence is introduced at trial to aid in the construction of a contract, such construction presents a question of law. [Citations.] Accordingly, on review of the judgment we are free to make independent determination of the policies' meanings as deduced from the pertinent provisions of the policies." (*Argonaut Ins. Co.* v. *Transport Indem. Co.,* 6 Cal.3d 496, 502 [99 Cal. Rptr. 617, 492 P.2d 673].)