[Civ. No. 1765. Fifth Dist. Apr. 2, 1974.]

HENRY DILLON et al., Plaintiffs and Respondents, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant and Appellant.

**COUNSEL**

McCormick, Barstow, Sheppard, Coyle & Best, McCormick, Barstow, Sheppard, Coyle & Wayte and Boone & Monroe and William B. Boone for Defendant and Appellant.

R. W. Levy for Plaintiffs and Respondents.

**OPINION**

**GARGANO, J.**—This is an appeal from a judgment of the Superior Court of Fresno County declaring that appellant, hereinafter referred to as Hartford, is obligated to defend respondents, hereinafter referred to as the Dillons, in the case of J. T. Cox v. Henry Dillon, et al, superior court action No. 139735; the complaint in that action was filed on January 6, 1969, in Fresno County.

The background facts are these.

In 1967 the Dillons had farm leases on two separate but adjoining 160-acre parcels of land located in the vicinity of Davis and Highland Avenues in Fresno County; one parcel was owned by Tango Johnston and the other by a Mrs. Elwood.

In the latter part of the year Johnston made arrangements with Winter-Abajian Well Drilling to drill a well on his neighbor's property. He also made arrangements with Walter Dan Sharp to "develop" the well, which means to pump sand out of the well casing. Johnston requested the Dillons to furnish their 1957 Model 850 Ford tractor to scrape the sand away as the well was being developed. The Dillons agreed to do so.

In the beginning the Dillons' tractor was operated by Robert Dillon. After a few days very little sand was being pumped from the well, and J. T. Cox volunteered to drive the vehicle. Cox was an employee of Walter Dan Sharp.

On January 8, 1968, the tractor became stuck in the sand. Cox attached a chain to the front of the tractor and to the back of a Chevrolet truck owned by Walter Dan Sharp; with Seth Abajian driving the truck and Cox operating the tractor, they pulled it free and onto level ground; Cox got off the tractor and walked to the truck to remove the chain. The tractor "started some way" and commenced to move on its own volition; it came to a stop when it struck the truck. In the meanwhile Cox got caught in the chain and was pulled under the truck. At the time the truck was standing still and Abajian was outside of it.

On January 6, 1969, Cox filed an action in the Superior Court of Fresno County against the Dillons, seeking damages for personal injuries. His complaint, in three causes of action, was predicated on the theory that the injuries were caused by a defect in the gear mechanism of the Dillons' tractor and that the Dillons had failed to provide the injured man with a safe place of employment; the complaint inter alia alleged that the Dillons had the direction, management, control and custody of the premises and of the Ford tractor and surrounding equipment.

On July 11, 1969, the Dillons brought this action for declaratory relief in the court below to determine whether Hartford was required to defend them in the Cox personal injury lawsuit under the insurance policies the company had issued to Winter-Abajian Well Drilling and to Walter Dan Sharp. These policies contain both comprehensive automobile liability and comprehensive general liability coverage and are essentially similar; hereinafter, they will be referred to as the Hartford policies.

After issue was joined on the complaint the cause was submitted to the court for decision on the basis of the pleadings in the Cox lawsuit, the Dillons' answers to Hartford's interrogatories and the depositions of Robert Dillon, Henry Dillon and J. T. Cox. Thereupon, the court determined that Hartford was obligated to defend the Dillons in the personal injury

lawsuit because they were additional insureds under both the comprehensive automobile liability and comprehensive general liability sections of the Hartford policies. Judgment was entered accordingly, and Hartford has appealed.

We consider first the court's ruling that the Dillons were entitled to a defense in the Cox lawsuit under the comprehensive automobile liability insurance sections of the policies.

In defense of the trial court's ruling, respondents make no contention that the tractor was covered by the automobile liability sections of the Hartford policies; they admit that the tractor is not within the definition of an automobile. Respondents also state that the trial court did not make any finding that the Dillons actually were using or legally responsible for the use of the Sharp truck within the ambit of the permissive user coverage of the policies. The Hartford policies contain the usual "groundless, false or fraudulent" clause and what respondents point out is that the court found the allegations of the complaint in the personal injury lawsuit were broad enough to suggest that the Dillons were using or were legally responsible for the use of Sharp's truck at the time of the accident. Respondents insist, even though the allegations of the complaint may be groundless, it is potential, not actual, liability under an insurance policy that is the test for determining the insurer's obligation to defend its insured. (*Hogan* v. *Midland National Ins. Co.,* 3 Cal.3d 553, 563 [91 Cal.Rptr. 153, 476 P.2d 825].)

■ It is true that the duty to defend litigation brought against an insured may exist even where the coverage is in doubt and ultimately does not develop. For example, in *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the Supreme Court declared that an insurance policy of the kind involved in this case contains two promises. It promises to indemnify the insured for any loss which falls within the coverage afforded by the contract. It also promises to defend the insured in any lawsuit brought by a third party in connection with a risk covered by the policy "even if any of the allegations of the suit are groundless, false or fraudulent." Under the first promise, no liability attaches to the insurer unless the loss actually is covered by the policy. The second promise, however, is not contingent upon actual liability, and the duty to defend is "fixed by the facts which the insurer learns from the complaint, the insured, or other sources" which give rise to potential liability under the policy. (65 Cal.2d, *supra,* at pp. 276-277.)

■ The duty to defend is not without limitation; it extends only to the defense of those actions of the nature and kind covered by the policy.

(*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 275.) If the insurer, after taking into consideration facts gathered from its own investigation or information supplied by the insured, determines that there is no potential liability under the policy, it may refuse to defend the lawsuit; "[t]his it does at its own risk, and if it later develops liability, or potential liability existed under the policy, the company will be held accountable to its insured, or to one who obtained judgment against its insured in the action it refused to defend." (*State Farm Mut. Auto. Ins. Co.* v. *Flynt,* 17 Cal. App.3d 538, 548 [95 Cal.Rptr. 296].)

As we have indicated, the complaint in the Cox personal injury lawsuit alleged, among other things, that the Dillons had the direction, management, control and custody of the premises and of the Ford tractor and surrounding equipment. In addition, the evidence presented in the court below shows that the Dillons were the lessees of the premises and suggests that they assumed the responsibility for scraping away the sand as the well was being developed; arguably, the Dillons were in control of the area, the Ford tractor and the surrounding equipment used in connection with the scraping operation. Because the Sharp truck was used to help extricate the tractor from the mud, it also is arguable that the insured vehicle was being used by the Dillons or that the Dillons were legally responsible for its use at the time of the accident. The crucial question, therefore, is whether the evidence shows that potential liability under the Hartford policies had arisen by virtue of the use of the truck by the Dillons.

■ The permissive use coverage of an automobile insurance policy does not require that the vehicle be the proximate cause of an accident in the strict tort sense. (*St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.,* 244 Cal.App.2d 826, 831 [53 Cal.Rptr. 650]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.,* 190 Cal.App.2d 194, 202 [11 Cal.Rptr. 762].) Consequently, the early cases applied a broad definition to the term "use" in order to uphold coverage whenever possible. Realizing there must be some relationship between the vehicle and the accident, recent decisions have taken a more sensible approach to the problem by narrowing the "use" concept, particularly in a case where the dispute is primarily between two insurance carriers and where an over-extension of the concept would result in a transfer of "liability from the insurer for the more culpable person or entity to the insurer for the innocent person or entity." (*Travelers Ins. Co.* v. *Northwestern Mut. Ins. Co.,* 27 Cal.App.3d 959, 965 [104 Cal.Rptr. 283].)

In *International Business Machines Corp.* v. *Truck Ins. Exch.,* 2 Cal.3d 1026, 1032 [89 Cal.Rptr. 615, 474 P.2d 431], the Supreme Court ex-

pressed great concern over the injustice which could result from an over-extension of the "use" concept in insurance policies. The court stated: "Almost all of the cases presenting the issue of 'use' of the vehicle by the shipper involved disputes between two insurance companies, as does this case, and a holding that the shipper constitutes a 'user' of the vehicle generally results in a transfer of all or part of the ultimate liability from the insurer for the negligent entity to the insurer of an innocent entity. Such a ruling secures for the shipper an insurance rate disproportionately low relative to the hazards of his business and may ultimately tend to discourage the shipper from exerting due care in the maintenance of the premises. Moreover, the injured person in these cases is almost always an employee of the trucker, acting within the course of his employment, and thus entitled to workmen's compensation for his injuries as well as to his tort action against the negligent shipper. So far as we have discovered, the combination of injury to a third party and a possibly financially irresponsible shipper has occurred in only one reported case, *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543 [19 Cal. Rptr. 558]."

In *Truck Ins. Exch.* v. *Webb,* 256 Cal.App.2d 140, 145-146 [63 Cal. Rptr. 791], the court explained: "Although the word 'use' must be given an all-inclusive connotation, there must be a causal connection between the use and the injury. The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events. Clearly the parties to an automobile liability policy do not contemplate a general liability insurance contract. (See *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 274 [54 Cal. Rptr. 104, 419 P.2d 168].)

"The test for determining the existence of the requisite causal connection has been expressed in varying language. It has been stated that the resulting injury must be a 'natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations, though not foreseen or expected. . . .' and that the injury cannot be said to arise out of the use of an automobile 'if it was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile].' (*Schmidt* v. *Utilities Ins. Co.,* 353 No. 213 . . . .)"

In *Camay Drilling Co.* v. *Travelers Indem. Co.,* 12 Cal.App.3d 237 [90 Cal.Rptr. 710], the insured trucks were towing drilling equipment from one drilling site to another; the trucks would move into a position 50 to 100 feet from the derrick, stop, winch the derrick forward, move

to a new position, and repeat the operation until the movement of the derrick was completed. At the time of the accident the trucks had come to a stop near their destination, and the foreman in charge of the moving operation was injured when he was struck by a piece of flow pipe which fell from the derrick. In holding that there was no coverage under the "use" clause of the insurance policy for the trucks the appellate court stated at pages 240-242: "We have concluded that the decision of the trial court in this case is strongly supported by the reasoning of the recent decision of our Supreme Court in *International Business Machines Corp.* v. *Truck Ins. Exch.*, 2 Cal.3d 1026 [89 Cal.Rptr. 615, 474 P.2d 431]. That decision enunciates a sensible limitation upon the proper application of the 'use' concept in determining the extent of insurance coverage for the permissive use of motor vehicles. Its reasoning exposes the unrealistic and unjust effects of further extending this concept to the point where it operates to transfer liability from the negligent entity to the insurer for the innocent entity—especially in cases in which the motor vehicle was only a peripheral, inactive or incidental factor.

". . . . . . . . . . . . . . . . . .

" 'In the present case, of course, negligence was the actionable wrong. The actionable negligence lay in the maintenance of . . . [a third party's] equipment, not in his maintenance or use of the insured truck. In the words of the *Missouri* decision quoted in *Webb* [*Truck Ins. Exch.* v. *Webb*, 256 Cal.App.2d 140, 145-146 (63 Cal.Rptr. 791)] . . . the injury was directly caused by an "independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile]." '

". . . . . . . . . . . . . . . . . .

"The trucks insured by respondent herein were being used solely as movable winches utilized in dragging appellant's equipment a few hundred feet. No third party user of the highway was involved and the relationship between the injured party and his employer under the terms of the California Workmen's Compensation law or otherwise is not an issue. [Fn. omitted.] In such circumstance to require the non-negligent policyholder's insurance carrier to finance its employee's damage claim for the sole benefit of the negligent appellant's carrier would serve none of the beneficent dictates of public policy enunciated in *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914], and in *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31, 39-40 [307 P.2d 359]."

In *Harbor Ins. Co.* v. *Employers' Surplus Lines Ins. Co.,* 26 Cal.App.3d 559, 567 [103 Cal.Rptr. 49], the court observed: "The California rule is consistent with the test suggested by Professor Prosser in determining the existence of cause in fact in a negligence case, that is, whether the agency in question was a 'material element and a substantial factor' in bringing about the injury. (Prosser on Torts (3d ed.) § 41, p. 244.)"

■ We have concluded that the trial court's ruling that appellant was obligated under the comprehensive automobile liability sections of the policies to defend the Dillons in the Cox lawsuit was error. It is very evident that the personal injury action was not predicated on any theory that the Sharp truck was the cause or even contributed to the injury. It was based primarily on the theory that the Dillon tractor was defective and, secondarily, that the Dillons were in control of the premises and failed to provide the injured man with a safe place of employment. In addition, the undisputed evidence shows that the insured truck had no causal connection with the accident.

In fact, the uncontradicted evidence upon which the trial court must have found potential liability is similar to the facts recited in *Camay Drilling Co.* v. *Travelers Indem. Co., supra,* 12 Cal.App.3d 237, upon which the appellate court declined to find coverage under an automobile insurance policy. In the case at bench, as in *Camay,* the truck had come to a stop and was standing still when the accident occurred. Also, like *Camay,* an independent act, wholly disassociated with the use of the insured vehicle, directly caused the injury to the alleged insured; according to Cox's own testimony, which is the only evidence on the point, the accident was caused either because he left the tractor in gear when he stepped down to unfasten the chain or the gear mechanism was defective, causing the vehicle to move on its own volition. As was true in *Camay,* " '[t]he actionable negligence lay in the maintenance of . . . [the tractor] not in [the] maintenance or use of the insured truck.' "

Furthermore, this is not a case in which the alleged insured was insisting on a defense from Hartford. On the contrary, it is reasonably apparent that the dispute in the court below was between two insurance carriers and that the declaratory relief action was instituted at the instance of one of the carriers. The record shows that the Dillons were being defended in the Cox lawsuit by Cal-Farm Insurance Company. The record also shows that the request that Hartford provide a defense for the Dillons came from the attorney assigned by Cal-Farm to defend the Dillons in the personal injury lawsuit. Under these circumstances, the trial court's judgment ordering appellant to provide a defense to the Dillons in the Cox lawsuit raises two serious consequences; (1) it raises a troublesome question as to which company shall be in charge of the defense in the lawsuit, and (2) it could

have the effect of shifting the responsibility for the defense from the insurer of the culpable party to the insurer of the innocent party.

Because the evidence presented in this case shows no potential liability under the comprehensive automobile liability sections of the Hartford policies, and because the Dillons already were receiving a defense in the Cox lawsuit, the court erred in ordering Hartford to provide a defense in that lawsuit. To paraphrase the words of Justice Ault in *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d 538, 548, if later it develops that liability or potential liability existed under the Hartford policies, the company will be held accountable to the Dillons for its refusal to defend them in the personal injury action.

■ We turn to the comprehensive general liability sections of the Hartford policies. These sections, among other coverage, purport to cover the named insureds and their employees "with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law." They also cover "any other person while operating with the permission of the named insured any such equipment *registered in the name of the named insured* and any other person or organization legally responsible for such operation."

Respondents concede that they are not specified as additional insureds under these sections of the policies. They argue that although the policies do not cover automobile accidents, they cover motor vehicle accidents and that the Dillons were insured thereunder by operation of law. Respondents maintain that Sharp and Abajian, the named insureds in the comprehensive general liability sections of the Hartford policies, were using the tractor when the accident occurred and that because the Dillons were legally responsible for the vehicle's use the latter were covered by virtue of section 11580.1 of the Insurance Code as it read at the time of the accident.[1] The section read in pertinent part as follows: "No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this state to the owner of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state, upon any motor vehicle then principally garaged or principally used in this state unless it contains the following provisions:

"· · · · · · · · · · · · · · ·

"(d) Provision insuring the insured named therein and to the same ex-

---

[1] See *Statutes 1965, chapter 1968,* page 4496, section 1.

tent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied."

It is doubtful that the comprehensive general liability coverage of the Hartford policies is even subject to the provisions of subdivision (d) of section 11580.1 as it read at the time of Cox' accident. The coverage is set forth in a separate part of the insurance contract and apparently was intended to protect the named insureds against any occurrence connected with their business activities other than automobile accidents occurring off of the business premises.  ■  As the Supreme Court pointed out in *Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192, 197 [84 Cal. Rptr. 705, 465 P.2d 841], in determining whether a policy is an automobile or motor vehicle liability policy subject to the *Wildman* doctrine, a court must "take cognizance of 'the intent and reasonable expectations of the parties in entering into the agreement.'" Also, in *Home Indemnity Co.* v. *Mission Ins. Co.,* 251 Cal.App.2d 942, 953 [60 Cal.Rptr. 544], the court said: "The automobile financial responsibility law is 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) The implementation of this policy warrants the proliferation of the coverage granted by a general comprehensive liability policy which was authorized in the case last cited. Where, however, the policy purports to cover automobile liability in one part and general liability in another the application of the same principles to the latter coverage serves to rewrite the policy to the exclusion of the specific provisions which are applicable to the automobile coverage. No authority is found for such a procedure."

We do not find it necessary to resolve this doubt. With the exception of the named insureds and their employees, the sections in question provide insurance coverage for persons who, with the permission of the insureds, use mobile equipment registered under any motor vehicle registration law and any person responsible for such use only if the equipment is registered to the named insured. Consequently, even if we were to assume that these sections of the Hartford policies qualify as automobile or motor vehicle liability policies and that the Dillons' tractor was being used by Sharp and Abajian at the time of the accident, the Dillons still would not be covered thereunder. The tractor was not registered to Sharp or Abajian and hence was not a described vehicle; nor were the Dillons covered by

operation of law. It is not nor has it ever been the public policy of this state to require an insurance company which issues an automobile or motor vehicle liability policy to cover persons other than the named insured unless such persons are permissive users of or are legally responsible for the use of a described vehicle. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,* 9 Cal.App.3d 508, 519-526 [88 Cal.Rptr. 246]; see *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d 538, 546; cf. *Mid-Century Ins. Co.* v. *Hernandez,* 275 Cal.App.2d 839, 849 [80 Cal.Rptr. 448].)

The judgment is reversed.

Franson, J., concurred.

**BROWN (G. A.), P. J.**—I concur with the reasoning and decision of the court. The evidence before the trial court makes clear that the Sharp truck was not the cause of nor did it contribute to the accident in which Cox was injured. The more restrictive definition of the use concept applied to those facts commands the result. So limiting the idea of use as that term is used in automobile liability insurance policies is logical, is doctrinally sound, and realistically responds to the equities involved.

I do not agree, however, with any implication that may be drawn from the language of the decision that such an interpretation is limited to situations where the dispute is between two insurance companies. The same interpretation should be applied whether the controversy is between an individual and an insurance company or otherwise. I see no justification for the popular idea that somehow an insurance company is to be judged by a different standard of justice than an individual or other litigant. In my opinion, all litigants should stand equal before the courts.

A petition for a rehearing was denied May 1, 1974, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied June 5, 1974.