ALLSTATE INSURANCE COMPANY,
Appellant–Subrogee Defendant,

v.

CINCINNATI INSURANCE,
Appellee–Plaintiff,

v.

Rick SHAW, Appellee–Defendant.

No. 48A02–9510–CV–619.

Court of Appeals of Indiana.

Sept. 18, 1996.

---

William C. Moore, Moore & Gaston, Indianapolis, for Appellant.

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, for Appellee.

## OPINION

FRIEDLANDER, Judge.

Allstate Insurance Company appeals a judgment that it was obligated to pay Cincinnati Insurance Company's subrogation claim based upon an automobile insurance policy issued to Kelly Bose by Allstate.

The facts favorable to the judgment are that Kelly Bose and Rick Shaw were employed by the Aid Company. Bose owned an Audi automobile and had smelled gasoline. Bose reported the problem to Shaw, who was a mechanic, and asked Shaw to check the vehicle. Shaw had done repair work for other fellow employees in the past and

agreed after reaching accord with Bose regarding the fee. On March 29, 1991, Shaw moved Bose's car into the mechanic's bay at the Aid Company and placed it on the hoist. While the car was elevated on the hoist, gasoline dripped onto a trouble light on the floor and burst into flames. The ensuing fire resulted in damage to Aid Company property in the amount of $21,425.38.

The Aid Company was insured by Cincinnati Insurance, which paid the Aid Company's insurance claim for damages caused by the fire. Cincinnati then filed a complaint for damages against Shaw and obtained a default judgment on April 23, 1993.[1] On September 29, 1992, Cincinnati filed a motion for proceedings supplemental for the purpose of making a subrogation claim against Allstate, which insured Bose's vehicle. Allstate denied liability upon the claim that the policy of insurance issued to Bose did not provide coverage for the occurrence. On July 5, 1995, the court entered judgment for Cincinnati and against Allstate on the subrogation claim.

Allstate presents several issues for review. We address only one of those issues, however, upon our determination that it is dispositive of the appeal. That restated issue is:

Did Shaw's activities constitute "use" of Bose's vehicle so as to qualify Shaw as an "additional insured", a prerequisite condition for coverage?

We reverse.

A threshold question that must be answered is whether Shaw was an "insured person" within the meaning of Bose's policy. Because Shaw neither owned the vehicle nor lived with Bose, the incident was covered only if Shaw met the following definition of "insured person":

1. While using *your* insured *auto:*

  a) *you,*

  b) any *resident,* and

  c) any other person using it with *your* permission.

*Record* at 99(C), p. 5(1) [emphasis in original]. It is undisputed that Shaw had Bose's

1. Cincinnati originally obtained default judgment against Shaw on July 15, 1992. That judgment was set aside after it was determined that Shaw had not received proper service of process.

permission to drive the vehicle into the service bay, lift it on the hoist, and effect repairs. The question that remains is whether Shaw was "using" the automobile within the meaning of the insurance policy when the incident occurred.

Both parties cite *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 291 N.E.2d 897 (1973) in support of their contentions. In that case, our supreme court stated:

> We are of the opinion that what was intended by the words in the contract, 'arising out of the ownership, maintenance or use' of the [vehicle] as applied to unnamed insureds is synonymous to being *caused* by use of the [vehicle] (including loading and unloading). Otherwise the insurance company becomes the insurer for every sort of accident by anyone to whom a delivery is made. We are in agreement with the trial court that the 'efficient and predominating cause' of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered.

*Id.* 291 N.E.2d at 899. Cincinnati Insurance contends that in *Indiana Lumbermens Mut.*, our supreme court determined that the phrase "arising out of the ownership, maintenance or use" is synonymous with "caused by" use of the vehicle that is a subject of the insurance policy in question. Cincinnati Insurance urges that, as a result, the scope of our inquiry should be focussed upon "whether the actions performed by Rick Shaw leading to the fire were *caused* by his maintenance of the vehicle". Appellee's Brief at 9.

Cincinnati Insurance's argument erroneously assumes that "use" is synonymous with "maintenance". Cincinnati's reliance upon *Indiana Lumbermen's Mut.* for this proposition is misplaced. The supreme court employed the phrase "ownership, maintenance or use" only because that was the language used in the policy before the court in that case. In the context of defining "insured person", the policy in the instant case em-

ploys only the term "using" and does not define that term as including the activity of "maintenance". We therefore confine our analysis to the question of whether Shaw was "using" Bose's car within the meaning of the policy such that Allstate is liable for damages caused by the fire.

We find no Indiana cases discussing the question. However, we find persuasive the disposition of a similar case by the California Court of Appeal. In *Travelers Ins. Co. v. Northwestern Mut. Ins. Co.*, 27 Cal.App.3d 959, 104 Cal.Rptr. 283 (1972), a car owner called a service station operator to his house to change a tire on the car. The operator jacked the car up, the car fell, gasoline leaked out from under the auto, ignited, and destroyed the garage. The operator's service station insurer paid the car owner's property damage claim and sought reimbursement from the car owner's auto insurance. The issue and the argument confronting the court were similar to those presented in the instant case:

> The question presented is whether [the operator's] actions in attempting to change the tire constituted a "use" of the [owner's] Pontiac within the terms of the ... "Persons Insured" provision [of the owner's auto insurance policy] so that [the operator] was an additional insured under the policy issued by Northwestern. [The operator's insurer] contends "that, when the tire-changing activities were occurring, he [the operator] was in the process of maintaining the Pontiac, and that such maintaining would be a use within 'Persons Insured,' Subsection (a)(2)."

*Id.* 104 Cal.Rptr. at 285. It should be noted that subsection (a)(2)[2] referred to above was similar in all relevant respects to subsection 1(c) of Bose's policy, defining "persons insured."

The court referred to previous decisions that had focused upon the question of whether an activity connected with an insured's car, other than the operation of the car, could

---

2. Subsection (a)(2) states:
PERSONS INSURED—The following are Insureds under the Automobile Liability Section.
(a) With respect to the owned automobile, ...
(2) any other person using such automobile

with the permission of the named Insured, provided his other actual use thereof is within the scope of such permission".
*Travelers Ins. Co.*, 104 Cal.Rptr. at 285.

be considered "using" the car in the context of insurance coverage. We cite with approval the following discussion on that topic:

> In deciding whether peripheral activity involving a vehicle amounts to a "use," the courts follow the rule that uncertainties in policy language are construed in favor of imposing liability on the insurer; hence, that "use" must be understood in its most comprehensive sense. [Footnote omitted.] The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured. [Footnote omitted.] American decisions considering repair and maintenance as a "use" reach disparate results dictated by variations in the facts or policy provisions. These decisions justify the generalization that vehicle repair or maintenance by an independent garage or service station operator is not itself a use of the vehicle....

*Id.* at 285 (quoting *Pacific Indem. Co. v. Truck Ins. Exch.*, 270 Cal.App.2d 700, 76 Cal.Rptr. 281, 283 (1969)).

We agree with the reasoning of the *Travelers Ins. Co.* court and conclude that Bose's vehicle was not being "used" within the meaning of the insurance policy provision defining "insured persons" when it was unoccupied, on a lift, and undergoing repairs for a fee. *See also Truck Ins. Exch. v. Aetna Casualty & Sur. Co.*, 13 Wash.App. 775, 538 P.2d 529, 533 (1975), *review denied*, 86 Wash.2d 1001 ("service station operator was not 'using' a customer's automobile when he was jacking up the vehicle to change a tire under an owner's indemnity policy defining an insured as 'any other person using such automobile with permission of the named Insured'"). Accordingly, Shaw was not an "additional insured" on the Allstate policy issued to Bose and Allstate was not liable for damages caused by Shaw's negligence in repairing Bose's auto.

Because we have determined that Shaw was not an additional insured under Bose's policy, we need not address Allstate's alternative contentions that damages caused by Shaw's negligence were excluded from coverage under other sections of Allstate's policy.

Judgment reversed.

BAKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

Unlike the policy in *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.* (1973) 260 Ind. 32, 291 N.E.2d 897, the policy here does not cover "maintenance or use". The policy here refers only to use. Under a policy like that in *Lumbermens*, Shaw's work on Bose's vehicle would have been within the "maintenance" coverage, without regard to whether such was a "use" of the vehicle. Another aspect of the policy involved in *Lumbermens* is not brought into play here. The *Lumbermens* policy had an expansive version of the term "use" in that it included "loading or unloading" of the vehicle.[3] I have serious doubts that without the express inclusion of "loading or unloading" in a policy, such activity might fairly be said to constitute a "use" of the vehicle contemplated by the insurance coverage. See *American Family Mut. Ins. Co. v. Nat'l Ins. Ass'n* (1991) Ind.App., 577 N.E.2d 969. In *American Family*, "use" of the vehicle as contemplated within an automobile business exclusion provision, was held to be restricted to "risks occurring while a vehicle is being driven or used as a means of transportation." 577 N.E.2d at 972. These doubts add to my agreement that the repair inspection being conducted here was not a "use" of the vehicle.

---

**3.** The claim involved in *Lumbermens* did not arise out of loading or unloading or other "use" of the vehicle. The water softener being delivered to the premises had already been unloaded from the vehicle. The injury was sustained while the softener was being carried down the basement stairs, which collapsed.