[Civ. No. 10343. Fourth Dist., Div. One. May 13, 1971.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent, v.
RICHARD CECIL FLYNT et al., Defendants and Appellants.

**COUNSEL**

Richard M. Hawkins for Defendants and Appellants.

Robert E. Cartwright, Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett and Leonard Sacks as Amici Curiae on behalf of Defendants and Appellants.

Portigal & Knight, Portigal, Hammerton & Pike and Allan Portigal for Plaintiff and Respondent.

**OPINION**

AULT, J.—Defendants appeal from a summary judgment entered in favor of the plaintiff insurance company in a declaratory relief action.

The facts are not in dispute. They involve an accident in a stolen car.

Plaintiff State Farm Mutual Automobile Insurance Company (State Farm) issued a policy of automobile insurance to Fred Flynt, listing him as the "named insured" and describing his 1964 Mercury automobile as the "owned automobile." Richard Flynt was Fred Flynt's 16-year-old step-son who at all times resided with his mother and Fred Flynt. On March 5, 1966, while the policy was in full force and effect, Richard found a 1962 Chevrolet automobile with the keys in the ignition, took it without the permission of its owner, and went joy-riding with defendant Douglas Covert.[1] During the course of the ride, an accident occurred and Covert was injured. He filed a personal injury action against the driver, Richard Flynt, seeking $55,000 in damages. The complaint alleged both negligence and willful misconduct, but did not mention the fact Richard had stolen the automobile and was driving it without the owner's permission. Defense of the action was tendered to State Farm which investigated the accident, concluded the policy issued to Fred Flynt did not provide coverage and refused to defend it. Although an answer was apparently filed on behalf of Richard, the case was heard as an uncontested matter and resulted in a judgment in the amount of $55,000 in favor of Covert and against Richard. Both Fred and Richard Flynt assigned their rights under the insurance policy to Covert.

State Farm then brought this declaratory relief action, naming Covert and Fred and Richard Flynt as defendants, seeking a judicial determination of its obligations, if any, under the insurance policy as related to the accident of March 5, 1966. Defendants answered, and Covert cross-complained, as an assignee of the policy, for breach of the insurance contract and for failure to defend the action, claiming $55,000 in damages. When the

---

[1]Nothing in the record indicates Covert participated in the theft or knew the car was stolen.

matter was at issue, defendants filed a motion for summary judgment. State Farm, in addition to opposing defendants' motion, filed a counter-motion for summary judgment. After hearing both motions, the trial court denied defendants' motion and granted State Farm's countermotion for summary judgment. The judgment reads in pertinent part:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that under the terms of the policy of liability insurance issued by plaintiff to defendant FRED G. FLYNT, no duty arose on the part of said plaintiff to pay on behalf of said defendant[s], or defendant RICHARD CECIL FLYNT, or any other party, any sum of money in discharge of a judgment rendered in the Orange County Superior Court in the matter entitled Covert vs. Flynt, No. 146,206; that under the terms of said policy, no duty arose on the part of said plaintiff to provide a defense to the defendants named in the suit entitled Covert vs. Flynt."

Appellants contend the summary judgment in favor of State Farm was improperly granted because: 1. The policy provision relied upon to deny coverage is against public policy and not permitted by statute. 2. The exclusionary clause relied upon is ambiguous and is misplaced in the policy. 3. The duty to defend is broader than the coverage question, and State Farm breached its contractual duty to defend Covert's suit against Richard Flynt even if the policy did not provide insurance coverage.

█ If the policy provision upon which State Farm based its denial of coverage is in fact contrary to public policy and not permitted by statute, such a ruling would be dispositive of the appeal and make discussion of the other issues raised unnecessary. We examine that issue first.

The insurance policy issued by State Farm to Fred Flynt contains two separate insuring agreements. Insuring agreement I deals with the "owned automobile"; insuring agreement II concerns "non-owned automobiles." Insofar as pertinent here the policy provides, with italics added:

"INSURING AGREEMENT I—THE OWNED AUTOMOBILE

"To pay . . . all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, . . . arising out of the . . . use, . . . of the owned automobile; *and to defend, . . . any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent; . . .*"

[As to insuring agreement I, the policy defines the word "insured" to include:]

"(1) the named insured, and

"(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and

"(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and

"(4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, and

"(5) . . . . . . . . . . . . . . . . . . ."

[This definition of insured is not applicable to insuring agreement II.]

"Insuring Agreement II—Non-owned Automobiles

". . . such insurance as is afforded by this policy *with respect to* the *owned* automobile under:

"(1) *coverages A and B* [bodily injury and property damage] *applies to* the use of a *non-owned* automobile by:

"(a) the first person named . . . or,

"(b) *if residents of the same household*, his spouse or the *relatives* of either, . . . ;

"(c) . . . . . . . . . . . . . . "(c) . . ;

"(2) [Medical Payments] . . . . . . . . . . . ;

"(3) [Collision and Comprehensive] . . . . . . . . ;

*provided such use, operation, occupancy or custody is with the permission of the owner or person in lawful possession of such automobile."*

State Farm bases its denial of coverage and its refusal to defend the suit brought by Covert against Richard Flynt upon the last quoted clause beginning with the word "provided" found in insuring agreement II. Since it is conceded the car involved in the accident was a stolen car, it is at once apparent it was a "non-owned automobile" *not* being used or operated with the permission of its owner. If the clause limiting coverage is permissible and effective, it is also apparent the policy does not afford coverage under the circumstances.

It is the clause limiting coverage on "non-owned automobiles" to auto-mobiles used or operated with the permission of the owner which appellants

contend violates public policy and is not permitted by law. In making this assertion, they rely upon *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359], and the later cases applying its rule, which held automobile liability insurance policies issued in this state must comply with the coverage requirements contained in the motor vehicle financial responsibility laws, and that any policy provision which attempts to limit such required coverage is void as against public policy. (*Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31, 39-40; *Mid-Century Ins. Co.* v. *Hernandez,* 275 Cal.App.2d 839, 843-844 [80 Cal.Rptr. 448]; *Abbott* v. *Interinsurance Exchange,* 260 Cal.App.2d 528, 530 [67 Cal. Rptr. 220].) Particular reliance is placed upon Vehicle Code section 16452 which defines the coverage requirements of an "operator's policy" of motor vehicle liability insurance and which is a part of the financial responsibility laws. Unlike Vehicle Code section 16451, which defines the coverage requirements of an "owner's policy," appellants argue Vehicle Code section 16452 requires the policy to insure *all non-owned vehicles* and does not permit a provision limiting coverage to non-owned automobiles driven with the permission of the owner. They cite *Mid-Century Ins. Co.* v. *Hernandez, supra,* 275 Cal.App.2d 839, and the effect placed upon Vehicle Code section 16452 appearing at page 849 in the opinion: "But if, for its own reasons, an insurance company elects to issue a policy that provides 'motor vehicle' liability insurance to someone described therein by class rather than by name, and in so doing describes the members of that class as 'insured,' then the public policy expressed in the statutes and in the cases construing those statutes comes into play. That policy, as we have said above, requires that, if an operator is to be insured at all, he must be insured wherever and for whatever motor vehicle he drives."

In our opinion, the viability of *Mid-Century Ins. Co.* v. *Hernandez, supra,* and *Abbott* v. *Interinsurance Exchange, supra,* upon which appellants also rely, as well as the applicability of the entire *Wildman* doctrine to the policy concerned here, has been decimated by the more recent opinion in *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,* 9 Cal.App.3d 508 [88 Cal.Rptr. 246]. After an exhaustive and well reasoned analysis, the court concluded the Legislature in 1963, by enacting Insurance Code section 11580.1[2] and by amending Vehicle Code section 16450 to add the

---

[2]At that time Insurance Code section 11580.1 provided in part:

"No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this state to the owner of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state, upon any motor vehicle then principally garaged or principally used in this state unless it contains the following provisions:

"(a) Provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code.

last sentence,[3] made Insurance Code section 11580.1 the sole standard for required insurance coverage provisions in policies issued *before* an accident, and relegated the requirements contained in Vehicle Code sections 16451 and 16452 to policies issued for certification as proof of financial responsibility *after* an accident. At page 525 the court stated: "Standing alone, section 11580.1 bespeaks an intent to gather to itself all the public policy concerns which had been expressed in *Wildman* and its successors, an intent to stand as the exclusive enumerator of required automobile coverage features *before* an accident. Such an intent would inferably confine Vehicle Code sections 16450-16451 to policies posted as proof of financial responsibility *after* an accident.

"Moreover, the legislature did not leave this statutory objective to the hazards of judicial inference. A 1957 amendment to former section 415 had added a phrase (now appearing in the first sentence of Veh. Code, § 16450, fn. 9, *supra*) designed to confine its demands to those policies certified under the financial responsibility law. [Citation.]

"The 1963 amendment now added the last sentence to section 16450 (fn. 9, *supra*), in effect reiterating the confinement of sections 16451 and 16452 to those insurance policies certified to the Department of Motor Vehicles under the financial responsibility law, implicit[l]y but firmly foreclosing their application to voluntary insurance sold on the general market. [Citations]." (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,*

---

"(b) Provision designating by explicit description or by appropriate reference all motor vehicles with respect to which coverage is intended to be granted.

"(c) Provision designating by explicit description the purposes of use of such motor vehicles with respect to which coverage is not intended to be granted.

"(d) Provision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied.

"(e) Notwithstanding the foregoing subdivisions, the insurer and any named insured may, by the terms of such policy or by a separate writing, agree that coverage under the policy shall not apply while said motor vehicles are being used by a natural person or persons designated by name. Such agreement by any named insured shall be binding upon every insured to whom such policy applies.

" . . . . . . . . . . . . .

[3]At that time Motor Vehicle Code section 16450 read: "A 'motor vehicle liability policy,' as used in Chapters 2, 3 and 4 of this division, means an owner's policy or an operator's policy, or both, of liability insurance, certified as provided in Section 16431 as proof of ability to respond in damages, issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured. *Any requirements set forth in said Chapters 2, 3 and 4 relating to a motor vehicle liability policy shall apply only to those policies which have been certified as proof of ability to respond in damages as provided in Section 16431."* [The italicized portion was added in 1963.]

9 Cal.App.3d 508, 525 [88 Cal.Rptr. 246].) In concluding its discussion of the effect of the 1963 legislation, the court stated at page 526: "If Vehicle Code sections 16451-16452 are viewed solely as a set of 'second accident' demands, aimed only at policies certified under the financial responsibility law, then Insurance Code section 11580.1 becomes the sole statutory expression of public policy as to automobile policies sold on the general market. It is difficult to conceive of separate public policies imposing different shapes on identical merchandise—one expressed by the legislature in Insurance Code section 11580.1, the other established by a judicial policy incorporating the demands of Vehicle Code sections 16451-16452."

Beyond our own agreement with its content, logic and reasoning, we find another compelling reason to follow *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* rather than the earlier appellate court decisions in *Abbott* and *Mid-Century,* which expressed contrary views. The Supreme Court denied a hearing in both the *Abbott* and *Mid-Century* cases, but it later, by implication, indicated the question of the effect of the 1963 amendments to the Vehicle and Insurance Codes remained open. (See *Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192, 196, fn. 1 [84 Cal.Rptr. 705, 465 P.2d 841].) Fastening upon this opening (see p. 525), the court, in *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* expressed specific disagreement with both the *Abbott* and *Mid-Century* decisions and reached contrary conclusions. Thereafter, the Supreme Court, on September 3, 1970, denied a hearing. Under these circumstances, we regard the Supreme Court's denial of a hearing in the *State Farm* case as a strong indication of its approval of the conclusions reached.

The policy of insurance under consideration here was issued *before* the accident in question. No contention is made the policy was issued for certification as proof of ability to respond in damages *after* an accident under Vehicle Code section 16431. Accordingly, the validity of its provisions must be tested by Insurance Code section 11580.1, as it read at the time in question, and not by the requirements of the financial responsibility laws as expressed in Vehicle Code sections 16451 and 16452. Nothing in Insurance Code section 11580.1 prohibited an insurance company from providing in its policy that coverage for liability arising out of the use or operation of "non-owned automobiles" was limited to those situations where the use or operation of the automobile by the insured was with the owner's permission. (See fn. 2.) The policy provision upon which State Farm based its denial of coverage and its refusal to defend was permitted by statute and did not violate the public policy of this state. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d 508, 526.)

Even if the clause limiting coverage is permitted by statute and does not contravene public policy, under well established rules it may not be enforced unless it is stated in the policy in such a manner "as clearly to apprise the insured of its effect." (*Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Any ambiguity or uncertainty in the policy must be resolved against the insurer (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]), and "the notice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear." (*Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284]; *Gray* v. *Zurich Ins. Co., supra,* 65 Cal.2d 263, 271.) However, courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. (*Jarrett* v. *Allstate Ins. Co.*, 209 Cal.App.2d 804, 810 [26 Cal.Rptr. 231]; *Pacific Employers Ins. Co.* v. *Maryland Casualty Co.,* 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641].)

Contrary to appellants' contention, the clause limiting coverage in the policy under consideration is unambiguous and gives notice of noncoverage in a manner which is "conspicuous, plain and clear." Reliance on *Anderson* v. *State Farm Mut. Auto. Ins. Co.*, 270 Cal.App.2d 346 [75 Cal.Rptr. 739], is misplaced. That case involved an earlier version of the policy provision, and in a similar situation, the court found a similar limiting clause ineffective. There the limiting clause, beginning with the word "provided," was not separated from the preceding clause by any punctuation. Semantically and grammatically the limiting clause did not modify the entire insuring agreement, but only the clause which immediately preceded it. Thus it did not limit coverage for liability for bodily injury which was provided in an earlier antecedent clause. At page 349, the court stated, "If there were a comma between the words . . . [the last word of the preceding clause] and 'provided' the result might be different, but there is none."

It is apparent to us the policy provision under consideration here is a revision which eliminates the defect revealed in the *Anderson* case. Not only is the limiting clause here separated from the last antecedent clause by a semicolon, but is it also separated from it on the page both vertically and horizontally so as to indicate clearly it is intended to modify all preceding clauses, including clause (1) which affords coverage for bodily injury.

The contention the limiting clause should not be given effect because it is misplaced in the policy is without merit. The limiting clause is contained in insuring agreement II, which affords coverage for nonowned

automobiles. The entire agreement is short and to the point, occupying about one-quarter of a page. As to a nonowned automobile, the insuring agreement itself clearly and unequivocally makes permission for its use a condition of coverage. Under the circumstances, there was no need for the limitation to appear in the exclusion portion of the policy.

We also reject the contention State Farm was obligated under its policy to defend the suit brought by Covert against Richard Flynt. It is predicated upon the provision in the policy which states the company will ". . . defend, . . . any suit against the insured alleging such bodily injury . . . and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent," and upon the further proposition the complaint filed by Covert against Richard Flynt did not allege the car driven by Richard was a stolen car, not driven with the permission of its owner.

While it is true, the duty to defend litigation brought against an insured may exist even where coverage is in doubt and ultimately does not develop, "The 'groundless, false, or fraudulent' clause, . . . does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 274.) Nor are the allegations of the complaint filed by the third party against the insured determinative of the insurance company's obligation to defend the suit. ". . . the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to *the potential of liability* under the policy." (*Ibid.,* 276-277.) (Italics added.) If, as stated in *Gray,* an insurance company may not rely solely on the complaint filed by a third party against its insured to determine its potential liability and duty to defend under an insurance policy, if, in making this determination, it must consider facts it learns from its own insured and from its own investigation, then it follows it may determine from the total facts it learns from all sources that potential liability does not exist under the policy and refuse to defend the suit. This it does at its own risk, and if it later develops liability, or potential liability existed under the policy, the company will be held accountable to its insured, or to one who obtained judgment against its insured in the action it refused to defend. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 279.)

In this action appellants concede Richard stole the car he was driving when the accident occurred. This being so, neither liability nor potential liability existed under the policy, and State Farm was not obligated

to defend the suit brought against him. (*Tucker* v. *Centennial Ins. Co.*, 247 Cal.App.2d 685, 686 [56 Cal.Rptr. 17].)

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied June 1, 1971, and appellants' petition for a hearing by the Supreme Court was denied July 7, 1971.