[Civ. No. 16380. Fourth Dist., Div. One. Oct. 24, 1978.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Respondent, v.
THOMAS J. MacKENZIE et al., Defendants and Appellants.

■■■■■■■■

■■■■■■■■

**COUNSEL**

Sachse & James, Robert H. James and Arthur D. Guy for Defendants and Appellants.

Belcher, Henzie & Biegenzahn and John S. Curtis for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Carolyn Gaden, individually and on behalf of her two minor children (the Gadens), and Thomas J. and Vicki L. MacKenzie (the MacKenzies) appeal from the judgment in favor of the plaintiff, State Farm Mutual Automobile Insurance Company (State Farm) which (1) declared the limits of the State Farm automobile liability policy issued to the MacKenzies to be in the sum of $10,000; and (2) denied the MacKenzies' request for attorney's fees and lost wages. We conclude State Farm performed in accordance with the terms of its policy and its actions do not entitle the MacKenzies to either attorney's fees or lost wages. Accordingly, we affirm the judgment.

On April 20, 1973, Monty R. Gaden, a passenger in a 1968 Chevrolet automobile owned by Richard W. Low (Low), and driven by Thomas J. MacKenzie (MacKenzie) was killed when the vehicle crashed. An action for damages for the alleged wrongful death was filed by the Gadens which named Low and MacKenzie as defendants. On the date of the accident, both the owner, Low, and the driver, MacKenzie, had automobile insurance with State Farm. The policy issued and delivered to Low in California expressly covered liability for the permissive use of the 1968 Chevrolet automobile which resulted in death to third parties with limits in the sum of $15,000 for each person and $30,000 for each accident. The policy issued to the MacKenzies had $10,000/$20,000 limits and insured them against liability to third persons for the use of their 1970 Chevrolet and other vehicles driven by them with the permission of the owner. To settle the wrongful death action with the Gadens, State

■■■

Farm offered $25,000 representing the total of the stated limits of the Low policy ($15,000) and the MacKenzie policy ($10,000). The Gadens rejected the offer. They contend the minimum limit of each policy was $15,000. The underlying action for declaratory relief was filed by State Farm to determine the total insurance coverage available for the automobile accident. In addition to their answer, the MacKenzies filed a cross-complaint requesting their attorney's fees and lost wages in attending the legal proceeding. The trial court declared the limits of the MacKenzie policy with regard to the accident in question to be $10,000 and denied relief to the MacKenzies on their cross-complaint.

The State Farm Automobile Liability Insurance
Policy Issued to the MacKenzies Was Not
Delivered in California

The major contention of the Gadens is public policy requires a reformation of an automobile insurance policy delivered in this state which does not meet the minimum limits of $15,000/$30,000. (See Ins. Code, § 11580.1;[1] Veh. Code, §§ 16057, 16059.) ■ The threshold inquiry as to whether the MacKenzie policy was delivered in California requires further elaboration of the facts.

Between 1968 and until they moved to California in September 1972, the MacKenzies resided in the States of Arizona, Oklahoma, Texas and New Mexico. Their State Farm policy was a joint policy issued in approximately June 1969 out of State Farm's regional office in Arizona and delivered to them in Arizona. Other than a brief conversation between Mrs. MacKenzie and her State Farm agent in Arizona at the time the policy was issued, neither Mr. nor Mrs. MacKenzie had any further conversations before the accident with anyone at State Farm concerning coverage. While residing in Oklahoma, they purchased a 1970 Chevrolet automobile and financed it through the Citizens National Bank of Dennison, Texas, which was named the loss payable beneficiary under a new policy issued by State Farm.

Because Mr. MacKenzie was employed in the horse racing industry, they usually returned to Ruidoso, New Mexico, from May to early September for the quarter horse meet. In August 1972, Mrs. MacKenzie mailed in her semi-annual premium in an envelope showing a return address in New Mexico. From August 1972 until after the accident, the application file was administered by the State Farm regional office in

---

[1]All references are to the Insurance Code unless otherwise specified.

New Mexico. On October 3, 1972, they refinanced their Chevrolet through Beneficial Finance Company of Vista, California, which was added to their policy as a loss payee. The practice of State Farm was to issue and send to a finance company a "Memorandum of Insurance" and, at the same time, a new face sheet would be issued with a new policy number (the letter "A" added to the end of the former policy number), the face sheet forwarded to State Farm's agent for countersignature, after which it was to be forwarded to the policy holder. The MacKenzies did not receive anything from State Farm confirming the addition of the loss payee or the change in the policy number. The policy at the time of the accident continued to show the post office address in Ruidoso, New Mexico, as the MacKenzies' residence. A premium notice for the renewal period commencing February 22, 1973, the last premium before the accident, was sent to the post office box in Ruidoso. In paying this premium, which she mailed from California, Mrs. MacKenzie put her return address as the same post office box in New Mexico.

The argument made by defendants that a memorandum of insurance mailed to Beneficial as loss payee in California is the same as the delivery in California of an automobile insurance policy to the MacKenzies requires our acceptance of two propositions: (1) the memorandum of insurance to Beneficial is equivalent to an automobile liability insurance policy under section 11580.1, subdivision (a); and (2) Beneficial was the agent of the MacKenzies for the purpose of accepting the policy. We are unable to accept either proposition. The policy requested by the MacKenzies to be sent to Beneficial was not a liability policy, but a loss payable policy for comprehensive and collision coverage. On the issue of agency, there is no evidence which substantiates the claim Beneficial was the agent of the MacKenzies for any purpose. The evidence reflects that in a customary business fashion when the refinancing of the automobile occurred, the legal owner, to protect its own interest, was named on the comprehensive and collision coverage of the existing policy of the MacKenzies. There are no equitable considerations which suggest we should reach a different result. State Farm at no time had either actual or constructive notice that either Mr. or Mrs. MacKenzie were living, were garaging their motor vehicle, or operating it in California. The case at bench is distinguishable from *Modglin* v. *State Farm Mut. Automobile Ins. Co.* (1969) 273 Cal.App.2d 693 [78 Cal.Rptr. 355]. In *Modglin,* uninsured motorist coverage was involved (§ 11580.2) and there was uncontradicted evidence the agent of State Farm had actual knowledge the car was garaged in California, and the assured's husband intended to take up permanent residence in this state. (*Id.,* at p. 700.)

### Public Policy Does Not Require a Reformation of
### the State Farm Policy Issued to the MacKenzies

■ The total public policy in regard to provisions required to be included in voluntary automobile liability insurance policies issued or delivered in California is contained in the Insurance Code. (See §§ 11580.05, 11580.1.) This legislatively declared policy affecting automobile insurance policies taken out before an accident replaced the judicially determined policy of *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359]. (See *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 132 [125 Cal.Rptr. 513]; *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 51 [109 Cal.Rptr. 698, 513 P.2d 922]; *U-Haul Co. of Southern Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1975) 50 Cal.App.3d 665, 669 [123 Cal.Rptr. 628]; *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 544-545 [95 Cal.Rptr. 296]; *State Farm Mut. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 524-525 [88 Cal.Rptr. 246].)

■ Section 11580.1 does not require coverage for the permissive use of nonowned vehicles. (See *U-Haul Co. of Southern Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co., supra,* 50 Cal.App.3d 665, 669.) The only coverage required for permissive use is with respect to vehicles designated in the policy. Hence, there is no requirement for any coverage under the State Farm policy issued to the MacKenzies for the accident in controversy where he was operating a vehicle not designated in his policy.

■ "An insurer has a right to limit coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume. [Citation.] The right of a company to limit its contract of coverage may not be questioned [citation], provided the limitation is not prohibited by public policy or statute. [Citation.]" (*Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 718 [90 Cal.Rptr. 94]; see *Pechtel* v. *Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194, 200 [93 Cal.Rptr. 53].) Here, the minimum amounts of coverage required under the financial responsibility laws of this state have been fully satisfied. Public policy does not require reformation of the State Farm policy issued to the MacKenzies.

### The MacKenzies Are Not Entitled to Consequential
### Damages Including Attorney's Fees or Lost Wages

■ Neither statutory nor decisional authority permits an award of attorney's fees or damages to the MacKenzies for their unsuccessful

efforts to obtain a sum in addition to the stated amount of their policy. (See *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 302 [54 Cal.Rptr. 116, 419 P.2d 180].)

Judgment affirmed.

Brown (Gerald), P. J., and Welsh, J.,* concurred.

A petition for a rehearing was denied November 8, 1978, and appellants' petition for a hearing by the Supreme Court was denied December 20, 1978.

*Assigned by the Chairperson of the Judicial Council.