[No. E007264. Fourth Dist., Div. Two. Apr. 16, 1991.]

CANADIAN INSURANCE COMPANY OF CALIFORNIA, Plaintiff and Respondent, v.
DUANE F. EHRLICH et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C and D.

384

COUNSEL

Chain, Younger, Lemucchi, Cohn & Stiles, Heather L. Nicoll and Lewis Graham for Defendants and Appellants.

Cotkin, Collins & Franscell and William D. Naeve for Plaintiff and Respondent.

OPINION

McKINSTER, J.—The Canadian Insurance Company of California (hereinafter, Canadian) brought an action for declaratory relief to determine whether Canadian's automobile liability insurance policy covered John Bohm's (John) use of Robert Bohm's (Robert) car. Canadian successfully moved for summary judgment, establishing no such coverage. The persons injured by John's use of the car and the survivors of a person killed by that use (collectively, the defendants) appeal. We affirm.

### FACTUAL BACKGROUND

#### A. THE ACCIDENT

In July of 1985, Robert owned an uninsured truck. Since Robert's driver's license had been suspended, he sometimes asked his son, John, to drive

him where he needed to go in his truck. However, John had never driven the truck alone. Furthermore, no one was allowed to use Robert's truck without Robert's permission. No one had keys to the truck except Robert.

On July 6, John drove Robert to watch a fireworks display. They returned home about midnight, and Robert went to bed. After Robert was asleep, John decided to leave the house. He took Robert's keys and drove away in his truck. Soon thereafter, with John at the wheel, the truck collided with a tree along Highway 18 near Running Springs, killing one of the passengers and injuring two others.

John knew that he was not allowed to drive the truck without Robert's permission, and knew that he did not have his permission to do so on this occasion. Indeed, he had not asked Robert for permission, because he knew that if he were to ask Robert for permission, it would have been denied.

## B. THE POLICY

The policy at issue was issued to Maxine Bohm, the wife of Robert and the mother of John. John was a "covered person," i.e., an insured, under this policy; however, Robert's truck was not a "covered auto."

In describing its "LIABILITY COVERAGE," the policy states: "We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident." (Italics in original.) However, the next page, in listing the "EXCLUSIONS" to that coverage, states in relevant part: "We do not provide Liability Coverage: . . . 11. For any person using a vehicle without a reasonable belief that the person is entitled to do so."

Canadian relied on this exclusion to establish that the policy did not cover John's nonpermissive use of the noncovered truck.

## CONTENTIONS

The defendants' first line of attack is that the exclusion relied upon by Canadian is unenforceable. They argue that the only permissible exclusions to coverage are those enumerated in Insurance Code section 11580.1, subdivision (c),[1] none of which deal with nonpermissive use.

Next, they attack the language of the exclusion itself, contending both that the term "entitled" is ambiguous and should be construed against

---

[1] Unless otherwise specified, all section references are to sections of the Insurance Code.

Canadian, and that the clause "without a reasonable belief that the person is entitled to do so" means something other than "without a reasonable belief that the person has permission to do so."

Third, they assert that a triable issue of fact exists as to whether John reasonably believed that he was entitled to use his father's truck.

Finally, contending that the applicability of the exclusion, if enforceable, hinged upon the credibility of John, they conclude that the trial court abused its discretion in failing to deny summary judgment on that basis, as permitted by Code of Civil Procedure section 437c, subdivision (e).

We find no merit in any of these contentions.

DISCUSSION

## A.  VALIDITY OF THE EXCLUSION

■ "An insurer has a right to limit coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume. [Citation.] The right of a company to limit its contract of coverage may not be questioned [citation], provided the limitation is not prohibited by public policy or statute. [Citation.]" (*Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 718 [90 Cal.Rptr. 94]; *State Farm Mut. Auto. Ins. Co.* v. *MacKenzie* (1978) 85 Cal.App.3d 727, 732 [149 Cal.Rptr. 747].) Does either public policy or statutory law prevent the enforcement of the exclusion by which Canadian sought to limit its liability?

In this case, the Legislature has expressly incorporated the relevant public policy into the statutes. Section 11580.05 provides in relevant part: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article [i.e., sections 11580 through 11589.5], [and] that this article expresses the total public policy of this state respecting the content of such policies, . . . . [With certain exceptions not applicable here], any other policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a motor vehicle shall comply with the requirements set forth in Sections 11580, 11580.1, and 11580.2."

Section 11580 deals with liability policies in general. Section 11580.2 deals with coverage regarding uninsured and underinsured motorists. The public policies relevant here are contained in section 11580.1, dealing with

automobile liability insurance. It provides in relevant part: "(a) No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). However, none of the requirements of subdivision (b) shall apply to the insurance afforded under any such policy (1) to the extent that such insurance exceeds the limits specified in subdivision (a) of Section 16056 of the Vehicle Code, or (2) if such policy contains an underlying insurance requirement, or provides for a retained limit of self-insurance, equal to or greater than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code.

"(b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions:

"(1) Coverage limits not less than the limits specified in subdivision (a) of Section 16056 of the Vehicle Code.

"(2) Designation by explicit description of, or appropriate reference to, the motor vehicles or class of motor vehicles to which coverage is specifically granted.

"(3) Designation by explicit description of the purposes for which coverage for such motor vehicles is specifically excluded.

"(4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission . . . .

"(c) In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies, including the insurer's obligation to defend, may, by appropriate policy provision, be made inapplicable to any or all of the following:

"(1) Liability assumed by the insured under contract.

"(2) Liability for bodily injury or property damage caused intentionally by or at the direction of the insured.

"(3) Liability imposed upon or assumed by the insured under any workers' compensation law.

"(4) Liability for bodily injury to any employee of the insured arising out of and in the course of his employment.

"(5) Liability for bodily injury to an insured or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured.

"(6) Liability for damage to property owned, rented to, transported by, or in the charge of, an insured. A motor vehicle operated by an insured shall be considered to be property in the charge of an insured.

"(7) Liability for any bodily injury or property damage with respect to which insurance is or can be afforded under a nuclear energy liability policy.

"(8) Any motor vehicle or class of motor vehicles, as described or designated in the policy, with respect to which coverage is explicitly excluded, in whole or in part."

The references in section 11580.1 to sections of the Vehicle Code are to its division entitled "Financial Responsibility Laws." (Veh. Code, div. 7, § 16000 et seq.) That division provides that "[e]very driver of, and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021." (Former Veh. Code, § 16020, see now § 16020, subd. (a).) One of the permissible forms of financial responsibility is a policy of liability insurance. (Veh. Code, § 16021, subd. (b).)

However, not just any insurance policy will suffice. (Veh. Code, § 16021, subd. (b).) To qualify, it must meet or exceed the minimum statutory liability limits of $15,000/$30,000/$5,000. (Veh. Code, § 16056, subd. (a).) Similarly, it must meet the requirements of Insurance Code section 11580.1. (Veh. Code, § 16054, subd. (d), now subd. (b).) Like the monetary limits, the requirements of section 11580.1 are minimum standards of coverage which the insurer and the insured may agree to exceed. (Veh. Code, § 16054, subd. (d), now subd. (b), which provides that the policy "need not contain provisions other than those required by" § 11580.1.)

This is the statutory scheme which Canadian's policy allegedly violates. Specifically, the defendants argue that since the exclusion at issue here does not fall within any of the eight categories of exclusions recognized in

subdivision (c) of section 11580.1, it must be unenforceable. In doing so, they rely on the following language from *California State Auto. Assn. Inter-Ins. Bureau* v. *Gong* (1984) 162 Cal.App.3d 518, 528 [208 Cal.Rptr. 649]: "As we explained in *Phelps* v. *Allstate Ins. Co.* (1980) 106 Cal.App.3d 752, 756 [165 Cal.Rptr. 263], that subdivision 'contains all of the exclusions permissible in California automobile insurance policies.' (See also Melnick, Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) p. 88.) Any exclusion not expressly authorized by section 11580.1 is therefore impermissible and invalid. (*Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 281 [121 Cal.Rptr. 694].)"

The defendants correctly determined that the rule of *Gong* is decisive of the issue, but not in the manner which they intended. *Gong* actually holds that the general rule quoted by the defendants does not apply to these facts. Inexplicably, the defendants fail to appreciate the significance of the very next paragraph of that opinion, which explains that an exclusion not found in section 11580.1, subdivision (c), is impermissible only to the extent that it reduces the scope of coverage which the statute requires a policy to provide. If an insurer extends coverage beyond the statutorily mandated minimums, it may tailor such additional coverage by drafting exclusions applicable to such additional coverage, without violating section 11580.1. As the court in *Gong* stated: "As to policies issued before accidents, [sections 11580 through 11589] govern the required contents of an automobile liability policy. [Citation.] As we have recounted earlier, there is nothing within these Insurance Code sections, or within any public policy in California, which dictates requirements for coverage of nonowned automobiles. [Citations.] Consequently, the insurer may lawfully limit coverage to certain types of vehicles, including vehicles not owned by the named insured. [Citation.] . . . In short, a limited extension of coverage not mandated by statute is not an exclusion." (162 Cal.App.3d at pp. 528-529.)

In *Gong*, the policy unnecessarily provided coverage to the named insured when driving certain nonowned vehicles, but excluded the other persons insured under the policy from receiving the same coverage. It held that such an exclusion did not violate section 11580.1. (162 Cal.App.3d at p. 529.)

Similarly, in *State Farm Mut. Auto. Ins. Co.* v. *MacKenzie, supra,* 85 Cal.App.3d 727, the insured was driving a nonowned vehicle, with the permission of the owner, when the fatal accident occurred. The policy insured him for such permissive use of a nonowned vehicle, but only to the extent of $10,000, $5,000 less than the statutory minimum under Vehicle Code section 16056. The insured contended that the policy had to be reformed to increase the coverage to $15,000. The appellate court disagreed, holding that since section 11580.1 does not require coverage for the use of

nonowned vehicles, the statutory minimums did not apply, and the insured was free to limit coverage for such optional liability to $10,000. (*Id*. at p. 732.)

The rule was succinctly stated in *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538 [95 Cal.Rptr. 296]. The policy at issue there covered the use of nonowned automobiles, but only if that use was "with the permission of the owner or person in lawful possession of such automobile." (*Id*. at p. 543.) Rejecting a claim that such a limitation violated section 11580.1, the court held: "Nothing in Insurance Code section 11580.1 prohibited an insurance company from providing in its policy that coverage for liability arising out of the use or operation of 'non-owned automobiles' was limited to those situations where the use or operation of the automobile by the insured was with the owner's permission. [Such a provision] was permitted by statute and did not violate the public policy of this state." (*Id*. at p. 546.)

The same rule is applicable here, where Canadian's policy provides coverage for an insured's use of nonowned vehicles, but only when that use is by a person who reasonably believes that he is entitled to do so. Since the statute does not require that the policy cover the use of nonowned vehicles at all, Canadian can restrict the extent of that optional coverage without violating section 11580.1. Accordingly, the exclusion clause here is enforceable.

## B. MEANING OF THE EXCLUSION

██ While it is undisputed that John did not have permission to use Robert's car at the time of the accident, the defendants insist that the applicability of the exclusion has not been proven. They point out that the exclusion is couched in terms of whether the driver had a reasonable belief that he was "entitled" to use the car, not whether he believed he had "permission" to use the car. Evidence of lack of permission is not conclusive of lack of entitlement, they argue, because "entitlement" is distinct from and broader than "permission." Moreover, since "entitled" is not defined in the policy, it is ambiguous, and a triable issue of fact exists as to its meaning, preventing summary judgment.

The defendants cite no authority for these propositions, and for good reason: they are all wrong.

First of all, even if the meaning of "entitled" is disputed, it is not a question of fact, and thus that dispute does not require reversal of the summary judgment. ██ "It is . . . solely a judicial function to interpret

a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) The trial court determined that, under these facts, "entitled" meant "permitted." We need reverse that decision only if it is incorrect.

■ "Absent an audience of technical language users, '[t]he policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert.' (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129] . . . .) We must read it as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves." (*Travelers Indemnity Co.* v. *Swearinger* (1985) 169 Cal.App.3d 779, 784 [214 Cal.Rptr. 383].)

■ The ordinary usage or meaning of the verb "entitle" is: "to give a right or legal title to" (Webster's New Internat. Dict. (3d ed. 1964) p. 758); "To give (a person or thing) the right to . . . do something; qualify or authorize" (Funk & Wagnalls Standard College Dict. (1974) p. 442). Legal usage is no different. (Black's Law Dict. (5th ed. 1979) p. 477.) Similarly, "permit" means "to give (a person) leave: authorize." (Webster's Third New Internat. Dict., *supra*, p. 1683.)

Thus, in the context of the exclusion clause at issue here, John could have had a reasonable belief that he was entitled to use the vehicle only if he reasonably believed that he had been given either legal title to the car, or permission (i.e., the right, the authority) to use it. Here, the undisputed evidence is that the truck belonged to Robert, and that John knew that it belonged to Robert; no one is claiming that the truck had been given to John. Therefore, the trial court correctly determined that the policy extended coverage to John only if John reasonably believed that he had permission to use Robert's truck.

C., D.*

. . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante*, page 383.

## DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and Hollenhorst, J., concurred.

A petition for a rehearing was denied May 2, 1991, and appellants' petition for review by the Supreme Court was denied June 26, 1991.