[No. E032839. Fourth Dist., Div. Two. July 10, 2003.]

JAMES GILMER, Plaintiff and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

McNulty & Saacke, Charles F. Saacke and William C. Saacke for Plaintiff and Appellant.

Crandall, Wade & Lowe, Edmond D. Wade and Curtis L. Metzgar for Defendant and Respondent.

OPINION

**HOLLENHORST, ACTING P. J.**—The parties submitted a joint verified petition to the trial court to determine two insurance coverage issues on stipulated facts. (Code Civ. Proc., §§ 1138–1139.) The first issue is whether the permissive user of a nonowned vehicle is an insured under the policy. The second issue is whether, under the stipulated facts, there was one accident or two. The trial court decided both these issues in favor of the insurance company. Mr. Gilmer, the injured party, appeals. (Code Civ. Proc., § 1140.) We affirm.

## THE STIPULATED FACTS

State Farm Mutual Automobile Insurance Company issued an automobile liability policy to David Nave as the named insured. The policy, which was in effect on August 25, 2000, covered a car owned by Mr. Nave.

On August 25, 2000, Mr. Nave was contemplating the purchase of a motorhome owned by James Gilmer. Mr. Nave and Shirley Schnell drove to Mr. Gilmer's home in Apple Valley to take the motorhome for a test drive. Mr. Gilmer initially drove the motorhome for about a mile. Mr. Nave then wanted to drive the motorhome.

The following occurred: "David Nave took over with James Gilmer giving up the driver's seat and beginning to walk from the driver's seat to the rear of the interior of the motorhome. [¶] ... As James Gilmer was walking to his seat, David Nave (apparently in an attempt to test the unit) started quickly on Central, accelerating towards the intersection of Esaws. [¶] ... James Gilmer noted a red light at Esaws as well as cross traffic. James Gilmer alerted David Nave who jammed on his brakes precipitating the fall of James Gilmer. James Gilmer fell forward striking his head against the step at the front area of the motorhome with sufficient force to create an unstable fracture of the spinal column. [¶] ... James Gilmer was on the floor with his neck bowed and his head against the step. [¶] ... Shirley Schnell told David Nave, 'I better take over the wheel.' With David Nave's agreement, they traded places and,

without stabilizing James Gilmer's neck, Shirley Schnell drove back to James Gilmer's residence and up into the driveway. [¶] … The fracture was unstable and the driving of the motorhome for approximately 1.1 miles and up into James Gilmer's driveway resulted in movement of the unstable fracture and the resulting paralysis. [¶] … The injury could have been stabilized absent the actions of Shirley Schnell."

Mr. Gilmer presented a bodily injury claim against David Nave, based on his contention that Mr. Nave was negligent in the manner in which he drove the motorhome. State Farm agreed to pay $125,000 to resolve Mr. Gilmer's claim against Mr. Nave. This sum represents the per person policy limit under the liability coverage ($100,000) plus the medical payments policy limit of $25,000.

Mr. Gilmer also made a claim against Shirley Schnell, based on the contention that she was negligent in driving Mr. Gilmer home without the fracture being stabilized. In that claim, he contended that Ms. Schnell was an insured within the meaning of Mr. Nave's State Farm policy. He also argued that the conduct of Ms. Schnell was a second accident, thus triggering a duty to pay a second policy limit amount of $125,000.

For purposes of this action, State Farm concedes that Ms. Schnell was negligent and that her negligence caused an aggravation of Mr. Gilmer's injuries. State Farm also agrees that, if Ms. Schnell is found to be an insured under the State Farm policy, and if there were two accidents, it will pay an additional $125,000 to Mr. Gilmer.

But State Farm argues that Ms. Schnell did not qualify as an insured under Mr. Nave's State Farm policy, and her conduct did not constitute a second accident.

Accordingly, to prevail, Mr. Gilmer must show that Ms. Schnell was an insured under the policy, and that two accidents occurred. The trial court found that Mr. Gilmer did not establish either of these elements of his claim. Since we agree that Ms. Schnell was not an insured, we do not reach the issue of whether two accidents occurred.

## ISSUES

The stipulated facts establish that Ms. Schnell was a permissive user of a vehicle that was not owned by Mr. Nave, the insured. The first issue presented by the stipulated facts is whether the State Farm automobile liability policy covered such permissive users. If not, the second issue is whether such coverage was required by Insurance Code section 11580.1, subdivision (b)(4).

## MS. SCHNELL WAS NOT AN INSURED UNDER THE STATE FARM POLICY

State Farm contends that its policy does not provide coverage to permissive users of nonowned vehicles. The policy does provide liability coverage for the insured's use of other cars: "The liability coverage extends to the use, by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car.*" The policy then defines a nonowned car: "When we refer to a *non-owned car, insured* means: [¶] (1) the first *person* named in the declarations; [¶] (2) his or her *spouse*; [¶] (3) their *relatives*; and [¶] (4) any *person* or organization which does not own or hire the car but is liable for its use by one of the above *persons.*" Since the parties stipulated that Mr. Nave and Ms. Schnell were not related or married to each other, we must agree with State Farm that its policy did not cover Ms. Schnell as the permissive user of a nonowned car.

Mr. Gilmer contends, however, that Ms. Schnell is an insured under paragraph (4) as a person who is liable for the vehicle's use by Mr. Nave, the insured. The argument is premised on the theory that Ms. "Schnell is vicariously liable for the acts of Nave because they were participating in a joint venture." Mr. Gilmer argues that the facts that Mr. Nave and Ms. Schnell lived at the same address and drove to Mr. Gilmer's home together "are sufficient to infer shared use and ownership upon purchase, and thus a joint venture."

We agree with State Farm that the argument is entirely speculative. There is no suggestion of a joint venture in the stipulated facts. Those facts state that Mr. Nave paid $200 to Mrs. Gilmer to hold the motorhome for a day until Mr. Nave had a chance to test drive it and have it inspected before Mr. Nave decided to purchase it. Subsequently, Mr. Nave decided not to purchase it. State Farm aptly cites *Roberts v. Craig* (1954) 124 Cal.App.2d 202 [268 P.2d 500]: "Vicarious liability is the exception. It is only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability." (*Id.* at p. 208.)

In addition, the issue presented was based on Ms. Schnell's assumed negligence in driving the motorhome from the location where Mr. Gilmer was injured to his home. It was not based on Ms. Schnell's alleged vicarious liability for the acts of Mr. Nave in causing the initial injury.[1] We therefore agree with State Farm and the trial court that the State Farm policy does not cover Ms. Schnell as an insured under the policy.

---

[1] At another point in his argument, Mr. Gilmer concedes that "the parties have stipulated that Gilmer's paralysis was not caused by Nave, but caused solely by Schnell." He also argues: "[T]he injury inflicted by Schnell (paralysis) was not the result of or directly attributable [to] Nave's acts (i.e. no causation)."

## INSURANCE CODE SECTION 11580.1 DOES NOT REQUIRE AN AUTOMOBILE LIABILITY POLICY TO COVER PERMISSIVE DRIVERS OF NONOWNED VEHICLES

The second issue is whether Insurance Code section 11580.1, subdivision (b)(4) required State Farm's policy to cover Ms. Schnell, as the permissive driver of a nonowned vehicle. Under that subdivision, an automobile liability insurance policy is required to contain a "[p]rovision affording insurance to the named insured with respect to any *owned or leased* motor vehicle covered by the policy, and to the same extent that insurance is afforded to the named insured, to any other person using the motor vehicle, provided the use is by the named insured or with his or her permission, express or implied, and within the scope of that permission, except that ... (ii) the insurance afforded to any person other than the named insured need not apply to: (A) any employee with respect to bodily injury sustained by a fellow employee injured in the scope and course of his or her employment, or (B) any person, or to any agent or employee thereof, employed or otherwise engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing automobiles with respect to any accident arising out of the maintenance or use of a motor vehicle in connection therewith. As used in this chapter, 'owned motor vehicle' includes all motor vehicles described and rated in the policy." (*Ibid.*, italics added.)

Prior to its amendment in 1993, the introductory clause of the statute, as amended in 1987, read: "Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy .... " (Stats. 1987, ch. 800, § 3, p. 2497.) In 1993, the section was interpreted to require mandatory permissive use coverage if the named insured gave the user permission to use the vehicle, even if it was a nonowned vehicle.

In *Mercury Ins. Group v. Checkerboard Pizza* (1993) 12 Cal.App.4th 495 [15 Cal. Rptr. 2d 657], the named insured, Robert Negrette, had an automobile liability insurance policy covering his family car. He then leased a car to use while the family car was being repaired. Mr. Negrette allowed his son to use the leased car in the son's work as a pizza delivery person. The son had an accident and the insurer sought to deny coverage based on an exclusion for business use of a nonowned vehicle. (*Id.* at p. 497.) The trial court granted the insurer's motion for summary judgment and the employer, Checkerboard Pizza, appealed.

The appellate court reversed, finding that Insurance Code section 11580.1, subdivision (b)(4) mandated permissive use coverage: "[T]o the extent a person is using a covered vehicle with the permission of the named insured is

excluded from the coverage given to the named insured, the policy provisions will be held invalid. [Citations.] And the named insured need not own the vehicle to have the authority to give his permission; if he has the right and power to control the vehicle, his permission will trigger the application of the mandatory permissive use coverage. [Citation.]" (*Mercury Ins. Group v. Checkerboard Pizza, supra,* 12 Cal.App.4th 495, 499.) The court found the business use exclusion inapplicable because Robert Negrette, the named insured, would have been covered under the terms of an exception to the exclusion if he had been delivering pizza. Since the named insured was covered, the statute requires that a permissive user be covered to the same extent. (*Id.* at pp. 499–500.)

Immediately after the case was decided, the Legislature amended Insurance Code section 11580.1, subdivision (b)(4) by changing the introductory phrase to read: "Provision affording insurance to the named insured with respect to any owned or leased motor vehicle covered by such policy ...." (Stats. 1993, ch. 408, § 1, p. 2263.) State Farm argues that this amendment limits the mandated permissive user coverage to owned or leased vehicles. Accordingly, it concludes there is no longer any requirement that permissive users have the same coverage as the named insured with regard to nonowned vehicles. Mr. Gilmer contends the Legislature only intended to allow the insurer to limit coverage of nonowned vehicles when they are used for commercial purposes.[2]

This court confronted a similar issue in *Canadian Ins. Co. v. Ehrlich* (1991) 229 Cal.App.3d 383 [280 Cal.Rptr. 141]. In that case, the defendants argued that an exclusion was unenforceable if it did not fall within one of the eight categories of exclusions recognized in subdivision (c) of section 11580.1. (*Canadian Ins. Co.,* at pp. 389–390.) We quoted *California State Auto. Assn. Inter-Ins. Bureau v. Gong* (1984) 162 Cal.App.3d 518 [208 Cal.Rptr. 649]: " '[T]here is nothing within these Insurance Code sections, or within any public policy in California, which dictates requirements for coverage of nonowned automobiles. [Citations.] Consequently, the insurer may lawfully limit coverage to certain types of vehicles, including vehicles not owned by the named insured. [Citation.] ... In short, a limited extension of coverage not mandated by statute is not an exclusion.' [Citation.]" (*Canadian Ins. Co. v. Ehrlich, supra,* 229 Cal.App.3d at p. 390.)

---

[2] Mr. Gilmer cites various documents from the legislative history of the amendment. However, he has not provided copies, nor has he requested that we take judicial notice of the documents. In any event, we agree with State Farm that the statute is unambiguous and reference to the legislative history is therefore unnecessary.

Thus, "[i]n *Gong*, the policy unnecessarily provided coverage to the named insured when driving certain nonowned vehicles, but excluded the other persons insured under the policy from receiving the same coverage. It held that such an exclusion did not violate section 11580.1. [Citation.]" (*Canadian Ins. Co.*, at p. 390.)

In *Canadian Ins. Co. v. Ehrlich, supra*, 229 Cal.App.3d 383, we concluded: "The same rule is applicable here, where Canadian's policy provides coverage for an insured's use of nonowned vehicles, but only when that use is by a person who reasonably believes that he is entitled to do so. Since the statute does not require that the policy cover the use of nonowned vehicles at all, Canadian can restrict the extent of that optional coverage without violating section 11580.1. Accordingly, the exclusion clause is enforceable." (*Canadian Ins. Co.*, at p. 391.)

The same is true in this case. ■ Since the current version of the statute does not require that a permissive user have the same coverage as the insured for nonowned vehicles, the policy definition of an insured to exclude certain permissive users, including persons unrelated to the insured, is permissible.

State Farm also cites *State Farm Mut. Auto. Ins. Co. v. Flynt* (1971) 17 Cal.App.3d 538 [95 Cal.Rptr. 296]: "Nothing in Insurance Code section 11580.1 prohibited an insurance company from providing in its policy that coverage for liability arising out of the use or operation of 'non-owned automobiles' was limited to those situations where the use or operation of the automobile by the insured was with the owner's permission. [Citation.] The policy provision upon which State Farm based its denial of coverage and its refusal to defend was permitted by statute and did not violate the public policy of this state. [Citation.]" (*State Farm Mut. Auto. Ins. Co.*, at p. 546.)

■ We agree with State Farm that the 1993 amendment to Insurance Code section 11580.1 makes it clear that an automobile liability insurer is only required to extend coverage to permissive users of vehicles owned or leased by the named insured and covered by the policy. It is not required to extend coverage to permissive users of nonowned vehicles.

State Farm cites *Vargas v. Athena Assurance Co.* (2001) 95 Cal.App.4th 461 [115 Cal.Rptr.2d 426] as the only case arising under Insurance Code section 11580.1, subdivision (b)(4) after the 1993 amendments. In that case, an uninsured employee driving his own car was injured and sought a declaration of coverage under his employer's policy. The appellate court held that the employer's policy excluded

employees while driving their own cars. (*Vargas,* at p. 463.) The employee pointed to policy language which covered the employer for owned and nonowned vehicles for which it had legal control or authority. It did not cover a permitted user for use of a nonowned vehicle. The employee argued, however, that subdivision (b)(4) required the insurer to provide the same coverage to him, as a permitted user, as the coverage provided to the insured employer. The appellate court rejected the argument, noting that "the current version of Insurance Code section 11580.1, subdivision (b)(4) specifically requires that permissive users be afforded coverage to the same extent as the named insured, but only with respect to vehicles 'owned or leased' by the named insured. The currently applicable version of the statute thus is consistent with the interpretation of the prior version of the statute and requires coverage only for vehicles owned or legally controlled by the named insured. [The employer's] policy thus would not cover [the employee] while driving in his own personal vehicle." (*Id.* at pp. 466–467, fn. omitted.)

Mr. Gilmer contends that *Vargas* "states [his] point exactly." Since *Vargas* states that the statute now requires coverage "for vehicles owned or legally controlled by the named insured," he argues that "legally controlled" includes nonowned vehicles which are not leased. He thus concludes that only nonowned vehicles used for commercial purposes may be excluded.

We disagree. The statutory term is "owned or leased." (Ins. Code, § 11580.1, subd. (b)(4).) As quoted above, *Vargas* clearly states that the current version of the statute only requires that permissive user coverage be the same as the insured's coverage for vehicles owned or leased by the insured. Although *Vargas* then uses the term "owned or legally controlled," (*Vargas v. Athena Insurance Co., supra,* 95 Cal.App.4th at p. 467.) the statutory language governs. We therefore decline to interpret "owned or leased" to include vehicles which are neither owned nor leased.

■ Since we agree with the conclusion that the current version of Insurance Code section 11580.1 does not mandate permissive user coverage for nonowned vehicles, the insurer was free to provide said coverage or not. Under the policy language discussed above, the insurer has clearly elected not to provide such coverage. Accordingly, Mr. Gilmer has not shown that Ms. Schnell was an insured under the policy. The trial court was therefore correct in its conclusion that she was not an insured.

## DISPOSITION

The judgment is affirmed.

Ward, J., and Gaut, J., concurred.